UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

THE COURTLAND COMPANY, INC.,
a West Virginia Business Corporation,

      Plaintiff,

v.                            Civil Action No. 2:19-cv-00894

UNION CARBIDE CORPORATION,
a New York Corporation,

      Defendant.

MEMORANDUM OPINION & ORDER

      Pending is the plaintiff's Motion for Leave to File Supplemental Complaint, filed on May 19, 2020 (ECF No. 33).

I.   Background

      The plaintiff, Courtland Company, Inc. ("Courtland"), initiated this action on December 13, 2019 alleging federal and state-law claims against the defendant, Union Carbide Corporation ("UCC"), for environmental pollution.  See ECF No. 1 ("Compl.").

UCC owns two parcels of land adjacent to Courtland's property: a rail yard and a landfill site.[1]  Id. ¶¶ 1, 14.  UCC's rail yard ("UCC Railyard") has allegedly stored onsite hazardous and toxic chemicals beginning "[n]o later than 1971," and such chemicals have allegedly leached into the environment, including into soils, surface waters, and groundwater underlying the plaintiff's property.  See id. ¶¶ 1, 6.  UCC's landfill ("Filmont Landfill") allegedly fails to comply with applicable state and federal laws, and hazardous wastes and other hazardous substances have allegedly leached from, and continue to leach from, the landfill into soils, surface waters, and groundwater, in further violation of applicable state and federal laws.  See id. ¶ 1.  UCC allegedly accepted solid wastes, hazardous wastes, and other hazardous substances for disposal at the Filmont Landfill from the 1950s through the 1980s.  See id. ¶ 6.  Courtland alleges that the Filmont Landfill remains an "illegal open dump"[2] owned, operated, and maintained by UCC in violation of federal and state laws because UCC never properly closed the

_____

[1] A third adjacent property owned by UCC, the "UCC Tech Center," is the subject of a related lawsuit.  See The Courtland Company, Inc. v. Union Carbide Corporation, 2:18-cv-01230.

[2] An "open dump" means "any solid waste disposal which does not have a permit under [the West Virginia Solid Waste Management Act, W. Va. Code § 22-15-1 et seq.], or is in violation of state law, or where solid waste is disposed in a manner that does not protect the environment."  W. Va. Code § 22-15-2(23).

2

property in accordance with applicable laws.  See id.; see also ECF No. 43-2 at 11 (describing the Filmont Landfill as "abandoned.").

Courtland alleges that the "release of toxic, noxious, harmful and hazardous contaminants into the environment" from the two UCC properties has caused actual damage to the environment; presents an imminent and substantial endangerment to the environment and human health; is an invasion of Courtland's right to the safe and comfortable use and enjoyment of its property; and is a serious public nuisance.  See id. ¶ 1. Courtland further alleges that UCC has intentionally hidden the pollution from Courtland, federal and state regulatory agencies, and the public at large.  See id.

Courtland alleges ten (10) causes of action in the original complaint.  Count I seeks to recover "response costs" for addressing releases of hazardous substances from the UCC properties, pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607(a).  See id. ¶¶ 2, 58-66.  Count II seeks injunctive relief pursuant to Section 7002(a)(1)(A) of the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6972(a)(1)(A), and civil penalties to be paid to the United States to redress the consequences of past and ongoing

violations of the RCRA.  See id. ¶¶ 2, 67-81.  Count III seeks judicial abatement of the imminent and substantial endangerment to public health and the environment caused by the solid wastes and hazardous wastes at and emanating from the UCC properties, pursuant to Section 7002(a)(1)(B) of the RCRA, 42 U.S.C. § 6972(a)(1)(B).  See id. ¶¶ 2, 82-88.

Count IV seeks judicial abatement of the ongoing public nuisance, see id. ¶¶ 2, 89-97; and Count V seeks judicial abatement of the ongoing public nuisance per se, see id. ¶¶ 2, 98-107.  Counts VI to X seek damages, including an award of punitive damages, under the laws of private nuisance, negligence, negligence per se,[3] gross negligence, and strict liability, for the harms to Courtland's property and property rights, including the loss of reasonable use and enjoyment, and the loss of property value.  See id. ¶¶ 108-34.

The plaintiff files its motion, seeking leave to file a supplemental complaint, pursuant to Federal Rule of Civil Procedure 15(d).  See ECF No. 33.  Therein the plaintiff asks to add a "citizen suit" claim under Section 505 of the Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. § 1365, to the original complaint.  Id. at 1.  The citizen suit

---

[3] Count VIII, negligence per se, was dismissed by order entered August 26, 2020.  See ECF No. 75 at 45-46.

claim alleges that UCC discharged and continues to discharge pollutants and stormwater, directly and indirectly through groundwater, into navigable waters of the United States, namely Davis Creek, without a permit in violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and in violation of Section 402 of the Clean Water Act, 33 U.S.C. § 1342.[4]  See ECF No. 47-1 ¶¶ 89-108.  The new claim seeks an injunction to require UCC to cease and desist the unpermitted discharge of pollutants and stormwaters into navigable waters at and from the Filmont Landfill, and to abate the adverse impacts on navigable waters resulting from this unpermitted discharge.  See id. ¶¶ 2, 108.  The motion is fully briefed.

## II.  Discussion

The Clean Water Act prohibits the discharge of pollutants into navigable waters of the United States without a permit.  33 U.S.C. § 1251 et seq.  Section 505(b) of the Clean Water Act, id. § 1365(b), provides for "citizen suits" to enforce provisions of the Act.  "[A]ny citizen may commence a civil action on his own behalf" against any person.  Id.

---

[4] The original supplemental complaint was filed on May 19, 2020. See ECF No. 33-2.  Courtland filed a proposed supplemental complaint on June 3, 2020 to correct a numbering issue in the original supplemental complaint.  See ECF No. 47-1.

§ 1365(a)(1).  No citizen suit under § 1365(a)(1) may commence "prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator [of the Environmental Protection Agency], (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator."  See id. § 1365(b)(1)(A).  The requirements concerning the contents of such notice are governed by 40 C.F.R. § 135.3(a).

The notice requirement serves two purposes.  First, it allows federal and state agencies to initiate their own enforcement action against an alleged violator, which obviates the need for a citizen suit.  See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 59-60 (1987); see also 33 U.S.C. § 1365(b)(1)(B) (barring citizen suits where "the Administrator or State has commenced and is diligently prosecuting" its own civil or criminal action).  Second, notice gives the alleged violator "an opportunity to bring itself into complete compliance with the [Clean Water Act] and thus likewise render[s] unnecessary a citizen suit."  See Gwaltney, 484 U.S. at 60; see also Hallstrom v. Tillamook Cty., 493 U.S. 20, 29 (1989) (citing Gwaltney in identifying the same two purposes for a parallel notice requirement under the RCRA).

Courtland alleges that it provided the required pre-filing notice to UCC and the appropriate federal and state

government authorities on November 20, 2019.  ECF No. 33 at 2.
The plaintiff further alleges that the sixty-day period had not
expired by the time it filed the original complaint on December
13, 2019.  Id.  Now that the statutory pre-filing waiting period
has expired, the plaintiff seeks leave to commence its Clean
Water Act citizen suit through its supplemental complaint.  See
id.

Courtland further alleges that the recent Supreme
Court opinion in County of Maui v. Hawaii Wildlife Fund confirms
and strengthens the right to seek redress through a citizen suit
for unpermitted discharges in violation of the Clean Water Act
and applies to unpermitted discharges from the Filmont Landfill
traveling through groundwater before reaching navigable surface
waters of the United States.  See id.  The Supreme Court in
County of Maui clarified that the permit requirement of Section
301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), applies to
"a discharge (from a point source) of pollutants that reach
navigable waters after traveling through groundwater if that
discharge is the functional equivalent of a direct discharge

from the point source into navigable waters."[5]  140 S. Ct. 1462, 1477 (2020).

UCC asserts two objections to Courtland's motion for leave to file a supplemental complaint.  First, UCC argues that the motion fails on its face because it does not meet the requirement of Rule 15(d) that the supplement concern "events" happening after the suit was filed.  See ECF No. 43 at 3-5. Second, UCC argues that Courtland failed to provide sufficient information in the pre-filing notice to meet the requirements of 40 C.F.R. § 135.3(a).  See id. at 5-10.

A.   Rule 15(d)

Rule 15(d) provides, in pertinent part, that:

On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.  The court may permit supplementation even though the original pleading is defective in stating a claim or defense.

Fed. R. Civ. P. 15(d).  "As a general rule, facts accruing after the suit is brought may not be inserted by way of amendment but must be added by supplemental pleading."  Young-Henderson v.

_____

[5] A "point source" is "any  discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container . . . from which pollutants are or may be discharged."  33 U.S.C. § 1362(14).

Spartanburg Area Mental Health Ctr., 945 F.2d 770, 775 (4th Cir.
1991).  "[T]he filing of a supplemental pleading is an
appropriate mechanism for curing numerous possible defects in a
complaint."  Franks v. Ross, 313 F.3d 184, 198 (4th Cir. 2002).
A supplemental complaint is also appropriate when a
jurisdictional condition is satisfied while the case is pending
in district court, thereby eliminating a jurisdictional issue in
the original complaint.  See Mathews v. Diaz, 426 U.S. 67, 75
(1976).

        Under Rule 15(c), an amended pleading relates back to
the date of the original pleading when "the amendment asserts a
claim or defense that arose out of the conduct, transaction, or
occurrence set out — or attempted to be set out — in the
original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  Rule 15(c)
allows the relation back of amendments "so long as the parties
have notice of the particular conduct, transaction, or
occurrence at issue."  Freight Drivers & Helpers Local Union No.
557 Pension Fund v. Penske Logistics LLC, 784 F.3d 210, 218 (4th
Cir. 2015) (concerning addition of new parties).  The doctrine
of relation back is liberally applied even when an amendment
"arose out of the conduct, transaction or occurrence that merely
was attempted to be set forth in the original pleading."  Cannon
v. Kroger Co., 837 F.2d 660, 668 n.14 (4th Cir. 1988) (internal

quotation marks omitted) (quoting 6 Wright, Miller & Kane, Federal Practice and Procedure § 1497 (3d ed. 1971)).  For the purposes of relation back under Rule 15(c), the technical distinction between an amended pleading and a supplemental pleading is not important, and a supplemental pleading should ordinarily be given the same relation-back effect as an amended pleading, provided that the supplemental pleading satisfies the Rule 15(c) test.  Davis v. Piper Aircraft Corp., 615 F.2d 606, 609 n.3 (4th Cir. 1980); see also T Mobile Ne. LLC v. City of Wilmington, Delaware, 913 F.3d 311, 327 (3d Cir. 2019); F.D.I.C. v. Knostman, 966 F.2d 1133, 1138 (7th Cir. 1992) ("The distinction between an amended pleading and a supplemental pleading is often disregarded for purposes of relation back under Rule 15(c).").

In Feldman v. Law Enforcement Associates Corp., the plaintiff filed suit on January 8, 2010, asserting a claim under the Americans with Disabilities Act ("ADA") and state-law claims for civil conspiracy and wrongful termination.  752 F.3d 339, 343 (4th Cir. 2014).  The plaintiff amended his complaint on June 7, 2010 to add a claim under the Sarbanes-Oxley Act of 2002 ("SOX"), 18 U.S.C. § 1514A, that had become ripe.  Id.  A SOX claim requires a waiting period of 180 days before filing suit.  Id. at 345.  Although the court lacked jurisdiction over the SOX

claim at the time the original complaint was filed, the
plaintiff was allowed to add his claim "due to the fact that the
180-day waiting period had since expired." See id. at 347.  The
court held that the amended complaint was "a supplemental
pleading under Rule 15(d), thereby curing the defect which
otherwise would have deprived the district court of jurisdiction
under Rule 15(c)." Id.  The court also concluded that the SOX
claim "arises out of the conduct, transactions, and occurrences
set out in the first complaint." Id. at 346.  The court
therefore held that, under Rule 15(c), the second complaint
"relate[s] back to the date of the first complaint." Id. at
347.

         Similarly, the Eighth Circuit in Wilson v.
Westinghouse Electric Corp., held that "[e]ven when the District
Court lacks jurisdiction over a claim at the time of its
original filing, a supplemental complaint may cure the defect by
alleging the subsequent fact which eliminates the jurisdictional
bar." 838 F.2d 286, 290 (8th Cir. 1988).  The court held that
the expiration of a statutory waiting period "was exactly the
kind of event occurring after filing that [the plaintiff] should
have been allowed to set forth in a supplementary pleading under
[Rule] 15(d)." Id.

Courtland's citizen suit under Section 505(b) of the Clean Water Act, 33 U.S.C. § 1365(b), was not ripe when the original complaint was filed on December 13, 2019 because the sixty-day statutory waiting period had not yet completed. Courtland was free to commence a Clean Water Act citizen suit upon the completion of the sixty-day period.  Since the citizen suit arises from the same alleged acts or omissions that give rise to the other claims in this action, Courtland's supplemental complaint relates back to the date that the original complaint was filed.  The only remaining issue is whether Courtland's pre-filing notice satisfies the requirements for such notice under 40 C.F.R. § 135.3(a).

B.   Notice for Clean Water Act "Citizen Suit"

Compliance with the notice requirement of 40 C.F.R. § 135.3(a) "is a mandatory condition precedent to filing suit under the Clean Water Act."  Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 629 F.3d 387, 400 (4th Cir. 2011).  Notice regarding an alleged violation of the Clean Water Act "shall include sufficient information to permit the recipient to identify" the following information: (1) the specific standard, limitation, or order alleged to have been violated; (2) the activity alleged to constitute a violation; (3) the person or persons responsible for the alleged violation;

12

(4) the location of the alleged violation; (5) the date or dates of such violation; and (6) the full name, address, and telephone number of the person giving notice.  40 C.F.R. § 135.3(a).  "The requirement of adequate notice does not mandate that citizen plaintiffs list every specific aspect or detail of every alleged violation," but notice "must provide the alleged violator with enough information to attempt to correct the violation and avert the citizen suit."  Friends of the Earth, 629 F.3d at 400 (internal quotation marks omitted) (quoting Pub. Interest Research Group of N.J., Inc. v. Hercules, Inc., 50 F.3d 1239, 1248 (3d Cir. 1995)).  A plaintiff's lack of information cannot excuse deficiencies in a notice.  Id. at 402.

The controlling case on this issue in the Fourth Circuit is Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., in which the Fourth Circuit considered the adequacy of a notice letter for alleged violations by a metals smelting facility after the district court made findings on such violations.  See 629 F.3d at 390-95.  The court concluded that the notice was adequate only with respect to discharge violations of pH and copper.  Id. at 401.  It was adequate as to pH and copper because the notice identified those two pollutants and the district court found them to be present in discharge violations on three specific dates.  Id.  The notice was not

adequate with respect to discharge violations of other pollutants because the notice did not identify those pollutants, even though the district court found them to be present. <u>See id.</u> The notice was also insufficient with respect to alleged monitoring and reporting violations because the notice did not provide information about the nature or the dates of such violations. <u>Id.</u> at 401-02. The Fourth Circuit ultimately held that "the district court erred in finding violations that were not alleged specifically in the plaintiffs' notice letter," except for the three discharge violations of pH and copper on specific dates. <u>Id.</u> at 402.

The Second Circuit has similarly held that for notice "to be 'sufficient,' the information provided must include the pollutant alleged to be the basis of a violation subsequently alleged in the complaint." <u>Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York</u>, 273 F.3d 481, 487 (2d Cir. 2001), <u>adhered to on reconsideration</u>, 451 F.3d 77 (2d Cir. 2006) (directing that thermal discharge claims that were alleged in the complaint but not in the notice should be dismissed without prejudice). The Tenth Circuit has also held that "the notice's identification of the alleged violations must be clear." <u>Karr v. Hefner</u>, 475 F.3d 1192, 1200 (10th Cir. 2007); <u>see also</u> <u>Benham v. Ozark Materials River Rock, LLC</u>, 885 F.3d 1267, 1274 (10th

Cir. 2018), <u>cert. denied</u>, 139 S. Ct. 174 (2018) (finding a notice to be adequate that describes the specific pollutants, specific locations, the specific sections of the Clean Water Act that were violated, and the specific date of a violation).

When the notice alleges continuing unlawful discharges of pollutants, the Ninth Circuit has found that the notice need not list every date on which alleged discharges occurred when other information in the notice regarding the cause and source of the alleged discharges permits the defendant to identify an adequate number of likely dates and to take remedial action. <u>See, e.g.</u>, <u>Waterkeepers N. California v. AG Indus. Mfg., Inc.</u>, 375 F.3d 913, 917-18 (9th Cir. 2004) (violations caused on "every rain event over 0.1 inches"); <u>San Francisco BayKeeper, Inc. v. Tosco Corp.</u>, 309 F.3d 1153, 1158-59 (9th Cir. 2002) (violations caused "on each day when the wind has been sufficiently strong to blow [petroleum] coke from the piles into the slough").

On November 20, 2019, Courtland provided a notice letter to UCC, the Acting Administrator of the Environmental Protection Agency, and the West Virginia Department of Environmental Protection, among others, of its intent to file a civil action under the RCRA and the Clean Water Act. <u>See</u> ECF No. 43-1. On December 6, 2019, Courtland sent a revised notice

letter to the same parties.  See ECF No. 43-2 ("Revised Notice").  The parties do not provide a reason for the revised notice.  The relevant text regarding alleged violations of the Clean Water Act is identical in both notices, and the parties do not distinguish the two notices.

The subject line in the notice includes, inter alia, "Notice of Violation and Conditional Intent to File a Civil Action, Pursuant to 33 U.S.C. § 1365(b)" (i.e., the Clean Water Act civil suit statute).  See Revised Notice at 3.  The notice alleges that:

> Finally, with respect to the Filmont Landfill, which is mounded on the edge of the Davis Creek and is apparently hydrologically connected to that creek, this matter concerns apparent violations of 33 U.S.C. §§ 1311, 1342, and 1344 with respect to unpermitted pollutant discharges from a point source to Water of the United States and the unpermitted placement of dredge or fill material into navigable waters of the United States.

Id. at 6.  Courtland asserts that it is "virtually impossible for contaminated groundwater to flow under Davi[s] Creek without also contaminating Davis Creek itself." Id. at 15-16. Courtland therefore alleges that "the Filmont Landfill has encroached upon and into the flood plain of Davis Creek and the unnamed tributary of Davi[s] Creek without a permit issued under Section 404 of the Clean Water Act." Id. at 20.  Courtland also alleges "on-going adverse impacts to groundwater and surface

water associated with the Filmont Landfill," which "continues to discharge into the surrounding groundwater system."  Id.

The alleged violations of the Clean Water Act in the notice fall under 33 U.S.C. § 1311 (Section 301 of the Clean Water Act, making unlawful the discharge of any pollutant that is not in compliance with enumerated provisions of the Clean Water Act); 33 U.S.C. § 1342 (Section 402 of the Clean Water Act, detailing the National Pollutant Discharge Elimination System); 33 U.S.C. § 1344 (Section 404 of the Clean Water Act, establishing a permit program to regulate the discharge of dredged and fill material into waters of the United States); 40 C.F.R. § 257.3-3(a) (prohibiting the discharge of pollutants into waters of the United States that is in violation of Section 402); 40 C.F.R. § 257.3-3(b) (prohibiting the discharge of dredged or fill material into waters of the United States that is in violation of Section 404).  See id. at 19-20.

Courtland's citizen suit claim in the supplemental complaint alleges ongoing, unpermitted discharge of "pollutants and stormwater" into navigable waters of the United States without a permit.  See ECF No. 47-1 ¶¶ 2, 89-108.  The supplemental complaint identifies the Filmont Landfill and two adjoining ditches — one on the north side and the other on the south side of the Filmont Landfill — connecting to the North

17

Boundary Creek and Davis Creek as a "point source."  Id. ¶ 100.
The supplemental complaint alleges that UCC has allowed for
decades, and continues to allow, the discharge of "pollutants"
from the Filmont Landfill "directly into Davis Creek through
seeps on the side of [the Filmont Landfill] that form a part of
the east bank of Davis Creek," and indirectly into Davis Creek
"via groundwater that is hydraulically connected to the [sic]
each of the ditches adjoining [the Filmont Landfill] and to
Davis Creek."  Id. ¶¶ 101-02.

UCC argues that Courtland failed to provide sufficient
notice of (1) the activity alleged to constitute a violation of
the Clean Water Act, (2) the location of such violation, and (3)
the date or dates of such violation.  See ECF No. 43 at 6.  In
particular, UCC alleges that the notice letter failed to
identify the specific pollutants alleged to be discharged, the
dates of such discharges, where such discharges occurred, and
the specific point source.  See id. at 9.  UCC also alleges that
the scant references to the Clean Water Act buried in sections
relating to the RCRA in the notice letter are not sufficient to
provide notice of violations of the Clean Water Act.  See id. at
9-10.  UCC further argues that the Clean Water Act claims
related to discharges of stormwater must be rejected in the
supplemental complaint because Courtland "failed to provide any

allegation, information, suggestion, or even a hint that it thinks this was occurring" in the notice letter.  See id. at 9.

Courtland contends that it provided the required pre-filing notice on November 20, 2019.  ECF No. 33 at 2.  Courtland asserts that its notice letter advised UCC of alleged "past and ongoing discharges in violation of sections 301 and 402 of the Clean Water Act at and from UCC's Filmont Dump into Davis Creek," discharges for which Courtland alleges that UCC never had a permit to conduct.  ECF No. 48 at 3.  Courtland's basic argument seems to be that UCC's alleged violations of the Clean Water Act for discharges emanating at and from the Filmont Landfill were obvious because it never received a discharge permit or a stormwater control permit for any of its past or ongoing discharges into Davis Creek.  To this end, Courtland insists that "[n]o one need pretend that UCC was left to guess the exact nature of its many violations of the Clean Water Act." Id.

The court finds that Courtland's pre-filing notice to UCC does not satisfy the requirements under 40 C.F.R. § 135.3(a).  First, the supplemental complaint alleges discharges of "pollutants and stormwater," but the notice does not identify stormwater discharge as an alleged violation to put UCC on notice or to allow UCC to take remedial action.  The

court therefore cannot consider the citizen suit for the alleged stormwater discharge violation.

Second, for the general allegation of "pollutants," the notice only identifies 1,4-Dioxane in connection with alleged violations of the Clean Water Act.  Courtland alleges in the notice that "1,4-[D]ioxane and 'some ethers'" from the Filmont Landfill were discovered in monitoring wells on property across Davis Creek from, and downgradient of, the Filmont Landfill.  See Revised Notice at 11.  Courtland also alleges in the notice that UCC admitted that "wastes" from the Filmont Landfill, including 1,4-Dioxane, were found in groundwater adjacent to a residential area across Davis Creek from the Filmont Landfill.  Id. at 15-16.  The notice clearly identifies 1,4-Dioxane, but the terms "some ethers" and "wastes" are too broad to provide adequate notice of an alleged violation under the standard set forth in Friends of the Earth.

Courtland further alleges in the notice that acetone and 2-butanone were present in "UCC landfill leachate," id. at 12, and that mercury was present in "environmental media at and emanating from the UCC's Filmont Landfill," id. at 16. Courtland mentions these chemicals in connection with the Filmont Landfill generally, but it is not clear whether these

chemicals were allegedly discharged into navigable waters of the United States in violation of the Clean Water Act.

Third, Courtland does not identify any dates of alleged violations in either the notice or the supplemental complaint.  Courtland likewise fails to provide any information in either document regarding the source and cause of the alleged violations that would permit UCC to identify plausible dates of such violations.  Courtland identifies the point source broadly in the supplemental complaint as the Filmont Landfill and two adjoining ditches, on the north and south sides of the Filmont Landfill, connecting to North Boundary Creek and Davis Creek. Courtland does not identify the point source location with respect to a given pollutant in the notice.  The lack of information on dates and location with respect to a specific pollutant and the specific standard, limitation, or order thereby violated is fatal to Courtland's citizen suit under the Clean Water Act.

## III. Conclusion

For the foregoing reasons, it is ORDERED that the plaintiff's Motion for Leave to File Supplemental Complaint be, and it hereby is, denied.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: October 23, 2020

John T. Copenhaver, Jr.
Senior United States District Judge