UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

THE COURTLAND COMPANY, INC.,
a West Virginia Business Corporation,

       Plaintiff and
       Counterdefendant,

v.                          Civil Action No. 2:19-cv-00894

UNION CARBIDE CORPORATION,
a New York Corporation,

       Defendant and
       Counterclaimant.

<u>MEMORANDUM OPINION & ORDER</u>

Pending is the plaintiff's motion to dismiss the defendant's counterclaim and strike its affirmative defenses, filed on September 30, 2020 (ECF No. 103).

I.   Background

The plaintiff and the defendant are corporations that own parcels of real property near Davis Creek in Kanawha County, West Virginia.  <u>See</u> ECF No. 1 ¶¶ 5-6, 15, 25; ECF No. 82 ¶¶ 5-6, 15, 25.  The plaintiff initiated this action on December 13, 2019, by filing a complaint alleging that the defendant has used two of its properties adjacent to the plaintiff's property to store hazardous and toxic materials, which have been released

into the nearby environment including the plaintiff's property. See ECF No. 1 ¶¶ 1, 14–57.

Based on these allegations, the plaintiff asserts three federal causes of action:  Count I seeks recovery of response costs and declaratory relief under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9607(a), 9613(g); Count II seeks citizen-suit relief for violations of § 7002(a)(1)(A) of the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6972(a)(1)(A), and the West Virginia Hazardous Waste Management Act; and Count III seeks citizen-suit relief for judicial abatement of an imminent and substantial endangerment under § 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B).  See ECF No. 1 ¶¶ 58-88.  The plaintiff's complaint also asserts state-law causes of action for judicial abatement of a public nuisance in Count IV, judicial abatement of a public nuisance per se in Count V, private nuisance in Count VI, negligence in Count VII, gross negligence in Count IX, and strict liability in Count X.  See id. ¶¶ 89-134.[1]

After the court ruled on the defendant's motion to dismiss the plaintiff's complaint, see ECF No. 75, the defendant

_____

[1] The court has dismissed the plaintiff's Count VIII claim for negligence per se.  See ECF No. 75 at 45–46, 55.

timely filed a responsive pleading that included an answer, 38 affirmative defenses, and a counterclaim, see ECF No. 82.  In its counterclaim, the defendant alleges that, in 1980, the plaintiff became the owner or operator of its property, which it or its lessees has used for "the storage and disposal of raw coal, fly ash, diesel fuel, concrete, timber, and other materials" and thus has "contributed to the release or threatened release of [h]azardous [s]ubstances" from, in, or onto the plaintiff's property, which "have caused or will cause" the defendant to incur necessary response costs, including removal costs and costs incurred to monitor, assess, and evaluate the release.  Id. ¶¶ 7-11.  Based on these allegations, the defendant asserts a first cause of action under CERCLA, 42 U.S.C. §§ 9607 and 9613(f), for response costs and contribution; a second cause of action under CERCLA, 42 U.S.C. § 9613(g), for declaratory relief; a third state-law cause of action for negligence; a fourth cause of action for declaratory relief under W. Va. Code § 55-13-1; and a fifth state-law cause of action for equitable indemnity.  See id. ¶¶ 5-27.

      The plaintiff thereafter filed the current motion, which seeks to strike the defendant's 38 affirmative defenses and to dismiss the five causes of action in its counterclaim. The motion has been fully briefed and is ready for disposition.

## II.  Discussion

In the current motion, the plaintiff asks the court to strike the defendant's affirmative defenses and to dismiss its counterclaim.  Although brought in the same motion under Fed. R. Civ. P. 12, the court addresses each issue separately.

### A.    Motion to Strike

Rule 12(f) allows the court to strike pleadings of "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Rule 12(f) motions to strike "are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'"  Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A Charles Alan Wright et al., Federal Practice and Procedure § 1380, 647 (2d ed. 1990)).  A decision from this district adequately sets forth the standards for considering a Rule 12(f) motion:

> the standard by which courts judge Rule 12(f) motions imposes a sizable burden on the movant. . . .  Before granting a motion to strike, a court must be convinced there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed.  It is difficult to establish a defense is clearly insufficient.

Clark v. Milam, 152 F.R.D. 66, 70 (S.D.W. Va. 1993) (internal quotation marks and citations omitted).  "[W]hen ruling on a motion to strike, the court must view the pleading under attack in a light most favorable to the pleader."  Id. at 71.

Further, "[e]ven where technically appropriate and well-founded, motions to strike defenses as insufficient are often denied in absence of a showing of prejudice to the moving party."  Id. at 70 (internal quotation marks omitted); see also 5A Charles Alan Wright et al., Federal Practice and Procedure §§ 1380-83 (3d ed. 2020).  Prejudice may exist, "for instance, where an 'irrelevant affirmative defense results in increased time and expense of trial, including the possibility of extensive and burdensome discovery.'"  Villa v. Ally Fin., Inc., No. 1:1CV953, 2014 WL 800450, at *1 (M.D.N.C. Feb. 28, 2014) (internal quotation marks, brackets, and ellipsis omitted) (quoting, ultimately, Canadian St. Regis Band of Mohawk Indians ex rel. Francis v. New York, 278 F. Supp. 2d 313, 325 (N.D.N.Y 2003)).  The movant bears the burden of demonstrating prejudice. See United States v. Gwinn, No. 5:06-cv-00267, 2006 WL 3377636, at *3 (S.D.W. Va. Nov. 30, 2006) (citing, inter alia, Clark, 152 F.R.D. at 70); see also 2 Moore's Federal Practice § 12.37[3] (2020) ("[T]he movant must clearly show . . . that [the challenged matter's] inclusion will prejudice the [movant].").

The plaintiff raises six arguments challenging all 38 of the defendant's affirmative defenses.[2]  The court addresses each of these arguments separately.

(1)  <u>Reservation of affirmative defenses (No. 15)</u>

In its fifteenth affirmative defense, the defendant states that it

> reserves the affirmative defenses of statute of frauds, statute of limitations, laches, estoppel, ratification, affirmation, doctrine of unclean hands, waiver, failure to mitigate damages, all defenses contemplated under Rules 8 and 12 of the Federal Rules of Civil Procedure, and such other affirmative defenses required by law to the Complaint or additional defenses that may subsequently become apparent as discovery proceeds in this matter.

ECF No. 82 at 34.  The plaintiff argues that this affirmative defense should be stricken because it attempts to reserve potential future defenses.[3]  The plaintiff further argues that, to the extent it attempts to incorporate all defenses available

---

[2] The plaintiff raised a seventh argument challenging the defendant's thirty-second affirmative defense.  <u>See</u> ECF No. 104 at 17–18.  In response, the defendant has agreed to withdraw its thirty-second affirmative defense.  <u>See</u> ECF No. 123 at 13 n.4.

[3] The plaintiff also challenged the defendant's twenty-eighth affirmative defense on similar grounds.  <u>See</u> ECF No. 82 at 36; ECF No. 104 at 13-14.  In response, the defendant has agreed to withdraw its twenty-eighth affirmative defense.  <u>See</u> ECF No. 123 at 13 n.4.

under Rules 8 and 12, the defense should be stricken because it fails to give fair notice of the nature of any defense asserted.

For support, the plaintiff cites Commerce & Industry Insurance Co. v. Newhall Contracting, Inc., No. 2:13-cv-30260, 2014 WL 4161971 (S.D.W. Va. Aug. 19, 2014) (Johnston, J.).  In that case, the court faced affirmative defenses that purported to assert all defenses listed in Kentucky Rule of Civil Procedure 8.03 and to reserve all defenses that might arise from additional discovery.  See id. at *1.  The court concluded that the defenses should be stricken.  See id. at 2-3.  To the extent the defendant asserted defenses set forth in the Kentucky Rule, it was determined that such an incorporation by reference failed to provide fair notice of the nature of the defenses asserted, especially because the defenses listed in the Kentucky Rule differed from those listed in the Federal Rules.  See id. at 2 (citing Clem v. Corbeau, 98 F. App'x 197, 203 (4th Cir. 2004)). More importantly for purposes of the current motion, to the extent the defendant purported to reserve the right to add defenses in the future, the court noted that courts consistently strike such reservations on the ground that defendants may amend their pleading to include additional defenses that emerge in discovery.  See Com. & Indus., 2014 WL 4161971, at *3 (collecting cases).

7

The court agrees with the decision in Commerce & Industry and applies its reasoning in this case. In the fifteenth affirmative defense, the defendant attempts not to assert an affirmative defense but to reserve the right to raise affirmative defenses at some indefinite time in the future. See ECF No. 82 at 34, 36. A reservation of potential future defenses is inappropriate primarily because it is not really an assertion of any affirmative defense. See Long v. Welch & Rushe, Inc., 28 F. Supp. 3d 446, 465 (D. Md. 2014); Racick v. Dominion Law Assocs., 270 F.R.D. 228, 237 (E.D.N.C. 2010); see also Mulvey Constr., Inc. v. Bituminous Cas. Corp., No. 1:07-0634, 2011 WL 1231603, at *2 (S.D.W. Va. March 30, 2011) ("[A] reservation of affirmative defenses is of no force and effect." (internal quotation marks omitted)). Additionally, because defenses that emerge in subsequent litigation may be asserted through amendment under Fed. R. Civ. P. 15, the right to later assert them need not be "reserved" in a responsive pleading. See Com. & Indus., 2014 WL 4161971, at *3. Furthermore, the court concludes that permitting the defendant to reserve defenses in this manner prejudices the plaintiff because doing so risks litigation over defenses that the defendant might not ultimately assert. See id. But see Francisco v. Verizon S., Inc., No. 3:09cv737, 2010 WL 2990159, at *9 (E.D. Va. July 29, 2010) ("[A]lthough a reservation of unpled defenses is not a

defense of any kind, much less an affirmative one, the Court perceives no prejudice to [the plaintiff] resulting from this pleading." (internal quotation marks, citation, and brackets omitted)).

For its part, the defendant argues that its fifteenth affirmative defense is proper because, unlike the defenses at issue in Commerce & Industry, it specifies which of the defenses listed in Rule 8 it is reserving. See ECF No. 123 at 15-16. In the court's view, this argument is beside the point. As the Commerce & Industry decision indicates, a defense, like the one at issue here, that merely attempts to reserve unpled defenses is deficient regardless if it specifies which unpled defenses are being reserved. The use of a blanket affirmative defense that fails to specify which defenses in Rule 8 are asserted presents a separate and independent basis for striking.

Accordingly, the court concludes that the defendant's fifteenth affirmative defense will be stricken.[4]

---

[4] The plaintiff acknowledges, and the court agrees, that, as the case progresses, the defendant may amend its pleading consistent with Rule 15 and Rule 16(b)(4) to assert the affirmative defenses it sought to reserve in its fifteenth affirmative defense. See ECF No. 104 at 14; see also Com. & Indus., 2014 WL 4161971, at *3.

(2)   <u>Necessary party defense (No. 12)</u>

In its twelfth affirmative defense, the defendant, citing Fed. R. Civ. P. 19, states that the plaintiff "has failed to join feasible and necessary parties needed to afford a just adjudication of the causes of action alleged in the [p]laintiff's Complaint and has also failed to allege the reasons why such parties have not been joined in this action." ECF No. 82 at 33.  The plaintiff argues that this defense is improper because the failure to join a necessary party should be raised in a Rule 19 motion rather than as an affirmative defense.  <u>See</u> ECF No. 104 at 16-17.

The court concludes that plaintiff's motion should be denied with respect to the twelfth affirmative defense.  Even assuming the defense is improper, the plaintiff has not met its burden to demonstrate prejudice.  Discovery in this matter will necessarily include whether the plaintiff, the defendant, or some third party caused the injuries underlying many of the plaintiff's causes of action.  <u>See, e.g.</u>, ECF No. 56; ECF No. 59 (litigating the adequacy of defendant's notice regarding the fault of third parties).  Thus, the plaintiff's argument that this affirmative defense prejudices it by subjecting it to the

burdens of additional discovery regarding the fault of others is
not persuasive.  See ECF No. 104 at 12-13.[5]

### (3)   At-fault nonparty defenses (Nos. 17 and 18)

In its seventeenth and eighteenth affirmative
defenses, the defendant asserts, pursuant to W. Va. Code § 55-7-
13d(s), that "a nonparty[] was wholly or partially at fault" for
the injuries alleged in the complaint, that the plaintiff's
recovery "must therefore be reduced by the percentage of fault
chargeable to such nonparty[]," and that the plaintiff's "claims
for joint and several liability are barred pursuant to [W. Va.]
Code § 55-7-13c(a)."  ECF No. 82 at 34.  The plaintiff argues
that the provisions of the West Virginia comparative fault

---

[5] The only prejudice the plaintiff identifies in its opening
brief is the time and expense it would incur from additional
discovery arising from issues it would otherwise not have to
litigate.  See ECF No. 104 at 12-13.  In its reply brief,
however, the plaintiff argues, for the first time, that it would
also be prejudiced by litigating a joinder issue late in
discovery or even after discovery concludes.  See ECF No. 128 at
11-12.  The court notes that the plaintiff is not entitled to
consideration of its argument regarding prejudice first raised
in its reply brief.  See Huskey v. Ethicon, Inc., 29 F. Supp. 3d
736, 745 n.4 (S.D.W. Va. 2014).  In any event, the court is not
persuaded that the plaintiff is prejudiced in this way when,
even in the absence of such an affirmative defense, the
defendant may seek to join necessary parties even beyond the
date set for doing so in the scheduling order by meeting the
appropriate standards under Fed. R. Civ. P. 15 and 16.  See City
of New Martinsville v. Pub. Serv. Comm'n of W. Va., No. 2:12-cv-
1809, 2013 WL 2244398, at *2 (S.D.W. Va. May 21, 2013).

statute defendant cites do not apply in this matter for the reasons raised in its separate motion to strike the defendant's notice of at-fault nonparties.  See ECF No. 104 at 18-19 (citing ECF No. 55).[6]

The court concludes that the plaintiff's motion should be denied with respect to the seventeenth and eighteenth affirmative defenses.  In a previous memorandum opinion and order denying the plaintiff's motion to strike the defendant's notice, the court rejected the same arguments regarding the statutory provisions at issue that the plaintiff raises in the current motion.  See ECF No. 155.  Further, the plaintiff's argument that the defenses' inclusion prejudices it by requiring discovery into matters it would not otherwise engage in is not persuasive: whether a third party, rather than the defendant, is at fault for the plaintiff's alleged injuries is necessarily a subject of discovery concerning the plaintiff's case-in-chief.

---

[6] Both parties expressly state that they incorporate into their briefing by reference their prior briefing regarding the plaintiff's motion to strike the defendant's notice of at-fault nonparties.  See ECF No. 104 at 18; ECF No. 123 at 20; ECF No. 128 at 12.  This court, like many others in this circuit, takes a dim view of the practice of incorporating a prior brief by reference into another brief, especially when the brief under consideration has already reached the applicable page limitation.  See, e.g., South Carolina v. United States, 232 F. Supp. 3d 785, 795-96 (D.S.C. 2017) (collecting cases).

**(4)   Denial-of-claims defenses (Nos. 8, 14, and 29)**

In its eighth, fourteenth, and twenty-ninth affirmative defenses, the defendant generally denies that it can be held liable for certain claims alleged, or forms of relief sought, in the plaintiff's complaint.  See ECF No. 82 at 32-33, 36.  The plaintiff argues that these defenses are improper because they are not defenses at all but, instead, merely denials of liability or challenges to the plaintiff's ability to establish a prima facie case for liability.  See Clark, 152 F.R.D. at 73 (explaining that "mere[] denials of liability and assertions that Plaintiff cannot establish a prima facie case" are not "avoidances or affirmative defenses within the meaning of Rule 8(c)").

The court concludes that the plaintiff's motion should be denied with respect to the eighth, fourteenth, and twenty-ninth affirmative defenses.  Even assuming the defenses amount to improper denials, the court discerns no prejudice that might arise from their inclusion in the pleadings.  See W. Va. Hosp. & Travel Ass'n, Inc. v. Southern, No. 2:16-cv-0184, 2019 WL 2387048, at *6 (S.D.W. Va. June 4, 2019) (denying motion to strike defenses "more properly characterized as a denial of an element of a claim" because they do not "vary in any meaningful way from . . . the denials contained in the rest of the answer"

13

and thus do not "confuse[] or expand[]" discovery or the issues in the case).[7]

    (5)  <u>Redundant Defenses (Nos. 1, 2, 3, 6, 7, 13, 17, 19, 20, 21, 22, 23, 24, 30, 36, 37, and 38)</u>

      The plaintiff argues that seventeen of the defendant's affirmative defenses can be placed into four groups, that each of the defenses is redundant of the other defenses within its groups, and thus that the defenses are improper.  <u>See</u> ECF No. 104 at 21-24.  The plaintiff argues that all but one of the defenses within each group, <u>i.e.</u>, thirteen out of the seventeen, should be stricken.  <u>See id.</u>[8]

---

[7] As the plaintiff points out, the court in <u>Clark</u> struck similar defenses as "superfluous," albeit after noting that they would "not surprise the plaintiff" and that they would likely "have no discernible effect on th[e] litigation."  152 F.R.D. at 73 (internal quotation marks omitted).  Yet, "[w]hile the court in <u>Clark</u> chose to strike such 'affirmative defenses,' it also noted that 'even where technically appropriate and well-founded, motions to strike defenses as insufficient are often denied in absence of a showing of prejudice to the moving party.'" <u>Southern</u>, 2019 WL 2387048, at * 6 (internal quotation marks and brackets omitted) (quoting <u>Clark</u>, 152 F.R.D. at 70).  Here, although the court declines to take the "'drastic remedy'" of striking them, <u>id.</u> at *7, the court sees no reason to regard the denials at issue as affirmative defenses.

[8] The defendant also asserts, in a single sentence, that the defenses in one of the groups — comprised of the second, twenty-fourth, thirty-sixth, and thirty-eighth affirmative defenses — are "legally insufficient" because they merely assert that the defendant made a good-faith effort to comply with the law.  ECF

The court concludes that the plaintiff's motion should be denied with respect to these affirmative defenses.  Although the use of redundant affirmative defenses might be improper, the court again is not persuaded by the plaintiff's assertion that such redundancy will result in additional discovery.  See Southern, 2019 WL 2387048, at *6.

(6)   Defenses as to CERCLA claim (Nos. 1 through 38)

The plaintiff argues that all of the defendant's 38 affirmative defenses should be stricken as to its Count I claim brought under CERCLA, 42 U.S.C. § 9607(a).  The plaintiff points out that courts in this circuit have held that a CERCLA claim brought under § 9607(a) is subject to only the four enumerated defenses provided in 42 U.S.C. § 9607(b).  See, e.g., United States v. Par Indus. Corp., No. 3:16-1703, 2016 WL 7175627, at *2 (S.D.W. Va. Dec. 8, 2016).

The defendant agrees that the four enumerated defenses in § 9607(b) are the exclusive affirmative defenses that apply to a § 9607(a) CERCLA claim.  See ECF No. 123 at 17.  The defendant further states that the only affirmative defenses it asserts against the plaintiff's CERCLA claim are its twenty-

_____

No. 104 at 22.  Because the plaintiff does not develop the argument further, the court will not consider it.

ninth, thirtieth, and thirty-first defenses. Because the defendant concedes that none of its other affirmative defenses apply against the plaintiff's CERCLA claim, the court will deny the plaintiff's motion insofar as it thereby seeks to strike any defenses aside from the twenty-ninth, thirtieth, and thirty-first defenses as to Count I.

With respect to the twenty-ninth defense, the court has already determined that it does not actually plead a defense but, instead, a denial of liability. And, because the plaintiff suffers no prejudice from it, the court will not strike the twenty-ninth defense.

With respect to the thirtieth defense, the defendant asserts in it that "[a]ny CERCLA response costs incurred by [the] [p]laintiff are the result of acts or omissions of third parties within the meaning of 42 U.S.C. § 9607(b)(3) over whom [the] [d]efendant had no control." ECF No. 82 at 36. Although conceding that the thirtieth defense attempts to assert the so-called "innocent landowner" defense provided in § 9607(b)(3),[9]

---

[9] Section 9607(b)(3) states:

> There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by . . . an act or omission of a third party other than an employee or agent of the defendant, or than

the plaintiff argues that it is nonetheless insufficient because it does not adequately plead each of the elements of a § 9607(b)(3) defense.

Although the Fourth Circuit has defined the elements a defendant must prove to succeed on a § 9607(b)(3) defense, see PCS Nitrogen Inc. v. Ashley II of Charleston LLC, 714 F.3d 161, 179 (4th Cir. 2013), it has not addressed what a defendant must allege to sufficiently assert the defense in a responsive pleading.  District courts in this circuit, including this court, however, have ruled that a defendant asserting a § 9607(b)(3) defense must sufficiently conform its allegations so as to satisfy certain elements of that defense.  See United States v. Godley, No. 3:19-cv-00202-RJC-DSC, 2020 WL 4507324, at *2–3 (W.D.N.C. Aug. 5, 2020) (citing, inter alia, United States

---

one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions[.]"

42 U.S.C. § 9607(b)(3).

v. Fairchild Indus., Inc., 766 F. Supp. 405, 411 (D. Md. 1991));
Southern, 2019 WL 2387048, at *4-5 (citing, inter alia,
Fairchild Indus., 766 F. Supp. at 411).  Among other things, the
defendant must plead that third parties were the sole cause of
the alleged release or threatened release of hazardous
substances as well as the damages resulting therefrom.  See
Godley, 2020 WL 4507324, at *2-3; Southern, 2019 WL 2387048, at
*4-5; Fairchild Indus., 766 F. Supp. at 411.  When a defense
fails to sufficiently conform to the elements of a § 9607(b)(3)
defense, it has been stricken.  See Godley, 2020 WL 4507324, at
*2-3; Southern, 2019 WL 2387048, at *4-5; Fairchild Indus., 766
F. Supp. at 411.

        The defendant's thirtieth affirmative defense fails to
state that third parties solely caused the releases alleged in
the complaint and damages resulting therefrom.  Instead, the
defense states only that the plaintiff's response costs were
caused by third parties and is ambiguous regarding whether the
response costs are solely attributable to the third parties.
See ECF No. 82 at 36.  The defendant's allegations are thus
insufficient to plead a § 9607(b)(3) defense.  Further, there is
a substantial risk that the plaintiff will be prejudiced by
litigating an issue — whether, for purposes of the CERCLA claim,
a third-party partially caused the response costs the plaintiff

18

incurred — that it might not otherwise litigate if the defense is stricken.  Accordingly, the court will strike the defendant's thirtieth affirmative defense.[10]

With respect to the thirty-first defense, the defendant asserts in it that "[a]ny CERCLA response costs incurred by [the] [p]laintiff are capable of apportionment[,] and [the] [d]efendant should not be apportioned any share of such costs." ECF No. 82 at 37.  The defendant argues that this defense is not directed at the plaintiff's CERCLA claim brought under § 9607(a) and thus is not "impact[ed]" by the exclusive enumeration of § 9607(a) defenses provided in § 9607(b).  ECF No. 123 at 17.  The defendant argues that the thirty-first defense is instead "exclusively related to contribution claims under [42 U.S.C. § 9613]." Id.

In its complaint, the plaintiff does cite § 9613 in relation to its CERCLA claim in Count I.  See ECF No. 1 at 1, 26–27, 47.  However, the plaintiff does not bring a claim for contribution under § 9613(f), but instead seeks declaratory relief under § 9613(g)(2), which appears to be entirely

---

[10] As has been done in other cases, the court notes that the defendant may request leave to amend its pleading to assert a defense that sufficiently conforms to § 9607(b)(3).  See Godley, 2020 WL 4507324, at *2; Southern, 2019 WL 2387048, at *6; Fairchild Indus., 766 F. Supp. at 411.

derivative of its § 9607(a) claim for response costs it alleges
it has incurred or will incur.  See 42 U.S.C. § 9613(g)(2)
(providing that "the court shall enter a declaratory judgment on
liability for response costs or damages"); Cal. Dep't of Toxic
Substances Control v. Jim Dobbas, Inc., No. 2:14-595 WBS EFB,
2014 WL 4627248, at *5, 8 (E.D. Cal. Sept. 16, 2014)
(explaining, in context of assessing affirmative defenses, that
claims for declaratory relief under § 9613(g)(2) are derivative
of claims under § 9607(a)); see also ECF No. 1 at 26, 47
(seeking under § 9613(g)(2) declaratory judgment that the
defendant is liable for response costs).  Thus, the court cannot
agree with the defendant that its thirty-first defense is not
barred by the exclusivity provisions of § 9607 for claims
brought under § 9607(a) and § 9613(g)(2).  See California ex rel.
Cal. Dep't of Toxic Substances Control v. Neville Chem. Co., 358
F.3d 661, 672–73 (9th Cir. 2004) (applying § 9607's limitation
of defenses to claims brought under both § 9607(a) and §
9613(g)(2)).

          Further, the court concludes that there is a
substantial risk that the plaintiff will suffer the same
prejudice arising from the defendant's thirtieth defense, if the
thirty-first defense is not stricken.  Specifically, permitting
the defendant to assert that liability for response costs is

capable of being apportioned among third parties would allow it
to essentially plead something that resembles an innocent
landowner defense that nonetheless does not sufficiently conform
to § 9607(b)(3).  Accordingly, the court will strike the
defendant's thirty-first defense.

B.    Motion to Dismiss Counterclaim

        Although the plaintiff primarily argues, pursuant to
Fed. R. Civ. P. 12(b)(6), that the defendant's counterclaim
fails to state a claim for which relief could be granted, it
also argues that the defendant's counterclaim should be
dismissed for lack of subject-matter jurisdiction, see ECF No.
104 at 2–3, 7–9 & nn. 2–3, see also ECF No. 128 at 1–2, 7–10, a
matter which bears conceptual priority and is typically
addressed under Fed. R. Civ. P. 12(b)(1).

        Federal district courts are courts of limited subject-
matter jurisdiction, possessing "only the jurisdiction
authorized them by the United States Constitution and by federal
statute." United States ex rel. Vuyyuru v. Jadhav, 555 F.3d
337, 347 (4th Cir. 2008).  As such, "there is no presumption
that the court has jurisdiction." Pinkley, Inc. v. City of
Frederick, 191 F.3d 394, 399 (4th Cir. 1999).  Indeed, when the
existence of subject matter jurisdiction is challenged under

21

Rule 12(b)(1), "[t]he [claimant] has the burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); see also Richmond, Fredericksburg, & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).  If subject-matter jurisdiction is lacking, the claim must be dismissed.  See Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006).

Subject-matter jurisdiction may be attacked with either a facial or a factual challenge.  Kerns v. United States, 585 F.3d 188, 192 (4th Cir. 2009).  In a facial challenge, like the one brought here, the movant is asserting that the allegations contained in the pleading fail to sufficiently establish the existence of subject-matter jurisdiction.  Id.  In a facial attack, the claimant is "afforded the same procedural protection as [it] would receive under a Rule 12(b)(6) consideration," so that "facts alleged in the [pleading] are taken as true," and the movant's motion "must be denied if the [pleading] alleges sufficient facts to invoke subject matter jurisdiction."  Id. (citation omitted).

(1)  First cause of action under CERCLA

In its first cause of action under CERCLA, the defendant asserts a § 9607 cost-recovery claim and a § 9613

contribution claim.  <u>See</u> ECF No. 82 at 39-41.  For a § 9607 cost-recovery claim, a private claimant must allege and prove "that (1) the [party sued] is a potentially responsible person ('PRP'); (2) the site constitutes a 'facility'; (3) a 'release' or a threatened release of hazardous substances exists at the 'facility'; (4) the [claimant] has incurred costs responding to the release or threatened release of hazardous substances ('response costs'); and (5) the response costs conform to the National Contingency Plan."  <u>PCS Nitrogen</u>, 714 F.3d at 167-68.

Further, as many courts have held, a private claimant bringing a § 9607 cost-recovery claim for response costs must establish that the cost it incurred is a <u>necessary</u> cost of response.  <u>See</u> 42 U.S.C. § 9607(a)(4)(B) (making PRPs "liable for . . . <u>necessary</u> costs of response by any [private] person" (emphasis added)).[11]  Although the Fourth Circuit does not appear

---

[11] Although the Fourth Circuit has not directly spoken on the issue, it has, in setting forth the elements of private CERCLA claims, stated that the claimant must prove it incurred <u>necessary</u> response costs.  <u>See</u> <u>Crofton Ventures Ltd. P'ship v. H & H P'ship</u>, 258 F.3d 292, 297 (4th Cir. 2001) (setting forth contribution claim elements); <u>Westfarm Assocs. Ltd. P'ship v. Wash. Suburban Sanitary Comm'n</u>, 66 F.3d 669, 677 (4th Cir. 1995) (setting forth cost-recovery claim elements).  Other courts of appeals have held that a private CERCLA claimant must establish that the response costs it incurred are necessary.  <u>See e.g.</u>, <u>Trinity Indus., Inc. v. Greenlease Holding Co.</u>, 903 F.3d 333, 352-53 (3d Cir. 2018); <u>Reg'l Airport Auth. of Louisville v. LFG, LLC</u>, 460 F.3d 697, 703-04 (6th Cir. 2006) (citing, <u>inter alia</u>, <u>G.J. Leasing Co. v. Union Elec. Co.</u>, 54 F.3d 379, 386 (7th Cir. 1995); <u>Dedham Water Co. v. Cumberland Farms Dairy, Inc.</u>, 972

to have addressed when response costs are necessary for purposes of a § 9607 cost-recovery claim, other courts have developed two requirements.  First, "[i]t is generally agreed that [the 'necessary'] standard requires that an actual and real threat to human health or the environment exist before initiating a response action."  Carson Harbor Vill., 270 F.3d at 871; accord Reg'l Airport Auth., 460 F.3d at 703, 706; Ashley II of Charleston, LLC v. PCS Nitrogen, Inc., 791 F. Supp. 2d 431, 480 (D.S.C. 2011).  Second, relying on CERCLA's definitional language, courts have held that, for a response cost to be considered "necessary," there must be "some nexus" between the alleged response cost and "an actual cleanup of hazardous releases."  Young, 394 F.3d at 864 (emphasis in original); see also Ellis v. Gallatin Steel Co., 390 F.3d 461, 482 (6th Cir. 2004); Gussack Realty Co. v. Xerox Co., 224 F.3d 85, 92 (2d Cir. 2000); Redland Soccer Club, Inc. v. Dep't of Army, 55 F.3d 827, 850 (3d Cir. 1995); Amoco Oil Co. v. Borden, Inc., 889 F.2d 664, 669-70 (5th Cir. 1989); Rhodes, 833 F. Supp. at 1182.[12]

---

F.2d 453, 459-60 (1st Cir. 1992)); Young v. United States, 394 F.3d 858, 863 (10th Cir. 2005); Carson Harbor Vill., Ltd. v. Unocal Corp., 270 F.3d 863, 871 (9th Cir. 2001) (en banc). District courts in this circuit have held the same.  See, e.g., HRW Sys., Inc. v. Wash. Gas Light Co., 823 F. Supp. 318, 341 (D. Md. 1993); Rhodes v. Cty. of Darlington, 833 F. Supp. 1163, 1179-80, 1188 (D.S.C. 1992) (Traxler, J.).

[12] With respect to the second requirement, the Ninth Circuit has said that its analysis "focus[es] . . . on . . . whether the

In the context of a § 9613 contribution claim, the claimant is a liable PRP and must allege and prove that the opposing party is also a liable PRP under § 9607 and therefore must bear an equitable share of the recovery costs for which the claimant is otherwise liable.  See id. at 168 (citing Minyard Enters., Inc. v. Se. Chem. & Solvent Co., 184, F.3d 373, 385 (4th Cir. 1999)).  Here, then, with respect to its § 9613 contribution claim, the defendant must allege and prove essentially the same elements it would be required to prove and allege for its § 9607 cost-recovery claim.  See Blasland, Bouck & Lee, Inc. v. City of N. Miami, 283 F.3d 1286, 1302 (11th Cir. 2002) ("In either a section [9607] direct cost recovery action or a section [9613] contribution action, the elements of the plaintiff's prima facie case are the same."); N.J. Turnpike Auth. v. PPG Indus., Inc., 197 F.3d 96, 104 (3d Cir. 1999)

---

response action is addressed to" a "threat to human health or the environment."  Carson Harbor Vill., 270 F.3d at 872. Although district courts in the Ninth Circuit have consistently understood this requirement to mean that "'[n]ecessary costs are costs that are necessary to the containment and cleanup of hazardous releases,'" City of Spokane v. Monsanto Co., 237 F. Supp. 3d 1086, 1094 (E.D. Wash. 2017) (internal quotation marks omitted) (quoting United States v. Iron Mountain Mines, Inc., 987 F. Supp. 1263, 1271 (E.D. Cal. 1997)), in a more recent opinion, the Ninth Circuit noted in dicta that it had "never interpreted the term 'necessary' as requiring a nexus solely between recoverable costs and on-site cleanup activities," Pakootas v. Teck Cominco Metals, Ltd., 905 F.3d 565, 581 (9th Cir. 2018).

("[T]he elements for both claims are essentially the same."); Prisco v. A & D Carting Corp., 168 F.3d 593, 603 (2d Cir. 1999) ("The elements of an action under § [9613] are the same as those under § [9607].").

      With respect to its response costs, the defendant alleges that:

1.   the plaintiff's or its lessees' release of hazardous substances onto the plaintiff's property "have caused or will cause [the defendant] to incur necessary [r]esponse [c]osts, as that term is defined in CERCLA," ECF No. 82 at 39;

2.   the plaintiff "has arranged for the disposal of [h]azardous [s]ubstances which are now present at the [plaintiff's] [p]roperty and has caused or will cause [the defendant] to incur [r]esponse [c]osts," id. at 40;

3.   "[the plaintiff] is liable under . . . CERCLA . . . for the [r]esponse [c]osts . . . that [the defendant] has incurred or will incur related to [h]azardous [s]ubstances, . . . which may be present at the [plaintiff's] [p]roperty, including but not limited to investigatory, remedial and removal expenses, attorney's fees and interest," id.;

4.   "[the defendant] has incurred necessary [r]esponse [c]osts of the nature defined in CERCLA, including 'removal costs,' to monitor, assess, and evaluate the release or threat of release of [h]azardous [s]ubstances which may be present at the [plaintiff's] [p]roperty and to prevent, minimize, or mitigate damage to public health or welfare or to the environment," id.;

5.   "[the defendant]'s [r]esponse [c]osts were incurred to analyze and investigate the nature,

> source, and extent of the contamination, enabling [the defendant] to identify . . . []PRPs[], to comment on the proposed remedy and to propose alternative remedial measures that more effectively address the releases and/or threatened releases and migration of the releases," id.;

6. "[t]he work [the defendant]'s attorneys and consultants have performed to identify PRPs is a necessary cost of a response," id.; and

7. "[a]ll [r]esponse [c]osts borne by [the defendant] have been necessary," id.

The plaintiff argues that the defendant lacks standing to bring its first cause of action under CERCLA because the defendant has failed to plausibly allege a cognizable injury in fact.  Although, as the defendant argues, it is unnecessary to assert an independent jurisdictional basis to bring certain counterclaims, see Painter v. Harvey, 863 F.2d 329, 331 (4th Cir. 1988), a counterclaimant must still have the requisite standing to bring each of its counterclaims, see Fifth Third Bank v. Brooke Holdings, Inc., No. 10-2294-KHV/GLR, 2011 WL 1337093, at *1 n.3 (D. Kan. Apr. 7, 2011) ("Although compulsory counterclaims need not allege an independent basis for subject matter jurisdiction, the counterclaimant must have standing to bring the claim."); accord PTI Assocs., LLC v. Carolina Int'l

_Sales Co., Inc._, No. 3:10CV108-RJC-DSC, 2011 WL 940725, at *3
(W.D.N.C. Jan. 3, 2011).[13]

"The standing doctrine derives from 'the
Constitution's limitation on Article III courts' power to
adjudicate cases and controversies'" and thus "implicates the
court's subject matter jurisdiction." _South Carolina v. United
States_, 912 F.3d 720, 726 (4th Cr. 2019) (quoting _Frank Krasner
Enters. v. Montgomery Cty._, 401 F.3d 230, 234 (4th Cir. 2005)).
"To establish Article III standing, 'a [claimant] must show (1)
it has suffered an injury in fact . . . ; (2) the injury is
fairly traceable to the challenged action of the [counter-
]defendant; and (3) it is likely, as opposed to merely
speculative, that the injury will be redressed by a favorable
decision.'" _Id._ (quoting _Friends of the Earth, Inc. v. Laidlaw
Envtl. Servs. (TOC), Inc._, 528 U.S. 167, 180-81 (2000)).

An injury in fact "refers to the invasion of some
'legally protected interest' arising from constitutional,

---

[13] Courts have consistently addressed arguments regarding a
counterclaimant's standing to bring a counterclaim without first
considering whether the counterclaim is of the kind that does
not require an independent jurisdictional basis. _See, e.g._,
_United States v. Vasquez_, 145 F.3d 74, 80-81 (2d Cir. 1998);
_Brooklyn Union Gas Co. v. Exxon Mobil Corp._, ___ F. Supp. 3d
___, 2020 WL 5519188, at *8-10 (E.D.N.Y. Aug. 13, 2020);
_Motsinger v. Nationwide Mut. Ins. Co._, 920 F. Supp. 2d 637
(D.S.C. 2013); _Gilbert v. Imported Hardwoods, Inc. v. Holland_,
176 F. Supp. 2d 569, 573-76 (S.D.W. Va. 2001).

statutory, or common law." Pender v. Bank of Am. Corp., 788
F.3d 354, 366 (4th Cir. 2015) (quoting Lujan v. Defs. of
Wildlife, 504 U.S. 555, 559-60 (1992)). "Indeed, the [legally
protected] interest may exist 'solely by virtue of statutes
creating legal rights, the invasion of which creates standing.'"
Id. (quoting Lujan, 504 U.S. at 578). "Thus, 'standing is
gauged by the specific common-law, statutory[,] or
constitutional claims that a party presents.'" Id. (quoting
Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund, 500
U.S. 72, 77 (1991)); see id. ("examin[ing] the principles that
underlie [the claimant]'s claim for [relief] under [a federal
statute] to discern whether there exists a legally protected
interest").

        In assessing standing at the pleading stage, the court
accepts as true allegations in the pleadings that are supported
by adequate factual matter to render them plausible on their
face. See Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017)
(citing Iqbal, 556 U.S. at 678). The same presumption of truth
does not apply to conclusory statements and legal conclusions
contained in the pleading. See id. (citing Iqbal, 556 U.S. at
678); see also David v. Alphin, 704 F.3d 327, 333 (4th Cir.
2013) ("When standing is challenged on the pleadings, . . .
[courts] do not . . . take account of allegations in the

[pleadings] labeled as fact but that constitute nothing more than legal conclusions or naked assertions." (internal quotation marks omitted)).  "A [claimant] has the burden to 'demonstrate standing for each claim [it] seeks to press' and 'for each form of relief' sought."  Outdoor Amusement Bus. Assoc., Inc. v. Dep't of Homeland Sec., 983 F.3d 671, 680 (4th Cir. 2020) (quoting Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008)).

Applying this standard here, the court agrees with the plaintiff that the defendant has failed to adequately allege an injury in fact to support the CERCLA claims asserted in its first cause of action.  Evaluating the counterclaim's allegations, the court notes that the only injury related to the CERCLA claims the defendant alleges is that it incurred costs responding to the alleged releases of hazardous substances on or from the plaintiff's property, as set forth in the seven allegations listed above.  See ECF No. 82 at 39-41.

Of the seven listed allegations relating to response costs, the court notes that, on their face, the first, second, third, sixth, and seventh allegations state nothing more than naked assertions or legal conclusions.  Likewise, the fourth allegation merely states, in a conclusory fashion, that the defendant incurred removal costs and then parrots CERCLA's

definition of "removal."  Compare ECF No. 82 at 39, with 42
U.S.C. § 9601(23).  The court need not accept these allegations
as fact and may set them aside for purposes of assessing the
defendant's standing to bring its CERCLA claims.  See Beck, 848
F.3d at 270; David, 704 F.3d at 333.

        The only remaining allegation is the fifth one listed
above.  As the defendant argues, that allegation states that it
"incurred [costs] to investigate the nature, source, and extent
of contamination to determine liability, remedies, and address
releases of substances."  ECF No. 123 at 8 (citing ECF No. 82 at
40).  The court concludes, for the reasons set forth below, that
this allegation is insufficient to plausibly allege an injury
necessary to confer standing.

        As the plaintiff correctly points out, the costs a
claimant incurs in unilaterally deciding to investigate the
potentially harmful or unlawful actions of another typically
cannot, by themselves, comprise a cognizable injury for purposes
of standing to bring suit.  See Clapper v. Amnesty Int'l USA,
568 U.S. 398, 416 (2013) (explaining that, where "the harm [the
claimants] seeks to avoid is not certainly impending," the
claimants' "contention that they have standing because they
incurred certain costs as a reasonable reaction to a risk of
harm is unavailing").  If the rule were otherwise, claimants

31

could "manufacture standing" "simply by making an expenditure" or "inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." Id. Thus, the defendant's allegation that it incurred costs investigating the alleged release of hazardous substances on or from the plaintiff's property, without more, would not normally suffice for purposes of alleging a cognizable injury.

However, Congress may create by statute a legally protected interest, the invasion of which constitutes a legally cognizable injury.  See Pender, 788 F.3d at 366.  A number of courts have concluded that, under CERCLA, certain costs incurred investigating the release of hazardous substances can constitute recoverable response costs, so long as the costs are necessary. See San Diego Unified Port Dist. v. Monsanto Co., 309 F. Supp. 3d 854, 865 (S.D. Cal. 2018) ("Investigation costs may support a CERCLA cost recovery claim; however, these response costs must be necessary to the cleanup of hazardous wastes."); see also Young, 394 F.3d at 863-64; Village of Milford v. K-H Holding Corp., 390 F.3d 926, 933-34 (6th Cir. 2004); HRW Sys., 823 F. Supp. at 342-43; Rhodes, 833 F. Supp. at 1192.  Thus, for purposes of standing, CERCLA may create a legally protected interest that is invaded when a claimant incurs certain costs investigating a release of hazardous substances.  See City of

*Spokane*, 237 F. Supp. 3d at 1091 (concluding that the incurrence of necessary response costs under CERCLA constitutes injury in fact).  Importantly, however, the contours of the interest created by CERCLA require that the costs of investigation, like all response costs, be necessary.  See *Pender*, 788 F.3d at 366 ("[S]tanding is gauged by the specific . . . statutory . . . claims that a party presents." (internal quotation marks omitted).  As previously discussed, for the cost of an investigation to qualify as necessary under CERCLA, there must exist an actual and real threat to human health or the environment and some nexus between the cost incurred and the actual containment or cleanup of a release of hazardous substances.  See *Reg'l Airport Auth.*, 460 F.3d at 703, 706; *Young*, 394 F.3d at 864; *Ellis*, 390 F.3d at 482; *Carson Harbor Vill.*, 270 F.3d at 871; *Gussack Realty Co.*, 224 F.3d at 92; *Redland Soccer Club*, 55 F.3d at 850; *Amoco Oil*, 889 F.2d at 669-70; *PCS Nitrogen*, 791 F. Supp. 2d at 480; *Rhodes*, 833 F. Supp. at 1182.

The defendant has failed to plausibly allege that the costs of investigation it incurred were necessary.  Throughout the counterclaim, the defendant alleges in a conclusory manner that the costs it incurred were necessary, *see* ECF No. 82 at 39-41, but the court need not accept these naked, legal assertions,

see Beck, 848 F.3d at 270; David, 704 F.3d at 333.  Beyond

conclusory assertions, the defendant also alleges that it

> has incurred necessary [r]esponse [c]osts of the
> nature defined in CERCLA, including 'removal costs,'
> to monitor, assess, and evaluate the release or threat
> of release of [h]azardous [s]ubstances which may be
> present at the [plaintiff's] [p]roperty and to
> prevent, minimize, or mitigate damage to public health
> or welfare or to the environment.

ECF No. 82 at 40.  As the court has already explained, however,

this allegation amounts to little more than a legal conclusion

because it merely parrots the definition of "removal" costs

found in § 9601(23).  In any event, although the allegation

refers to "damage to public health or welfare or to the

environment," id., the defendant does not plausibly allege –

beyond this naked assertion – that there exists a real threat to

human health or the environment.  Further, the defendant fails

to allege any facts from which the court could reasonably infer

some connection between the investigation costs the defendant

alleges it incurred and any effort to actually contain or clean

up a release of hazardous substances.

In sum, because the defendant has not plausibly

alleged that it incurred a response cost that is necessary, as

that term is used for purposes of CERCLA, it has failed to

plausibly assert a cognizable injury in fact necessary to confer

standing to bring the CERCLA claims in its first cause of

action.  The court will therefore dismiss the first cause of action for lack of subject-matter jurisdiction.

   (2)   Second cause of action for declaratory relief under CERCLA

      The defendant's second cause of action seeks declaratory relief pursuant to § 9613(g), which provides that, "[i]n any" "action for recovery of the costs referred to in section 9607," "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."  42 U.S.C. § 9613(g)(2).  Under this provision, the defendant seeks a declaration that the plaintiff is liable for the defendant's future costs incurred responding to the alleged release of hazardous substances on or from the plaintiff's property.  See EFC No. 82 at 41.

      As the plaintiff argues, "a [claimant] cannot obtain declaratory relief pursuant to § 9613(g)(2) without having incurred [necessary] response costs within the meaning of § 9607(a)(4)(B)."  Trimble v. Asarco, Inc., 232 F.3d 946, 958 (8th Cir. 2000), abrogated on other grounds by Exxon Mobil Corp v. Allapattah Servs., Inc., 545 U.S. 546 (2005); see also City of Colton v. Am. Promotional Events, Inc.-W., 614 F.3d 998, 1007 (9th Cir. 2010) (collecting cases); Mercury Mall Assocs., Inc.

v. Nick's Market, Inc., 368 F. Supp. 513, 520 (E.D. Va. 2005)
("Declaratory relief under § 9613(g)(2) is only available in
connection with an active cost recovery action."). When the
claimant has not incurred necessary response costs sufficient to
sustain a cost-recovery action under § 9607, the court may lack
jurisdiction to entertain a claim for declaratory relief under §
9613(g)(2). See Trimble, 232 F.3d at 958-59 (citing Gopher Oil
Co. v. Bunker, 84 F.3d 1047, 1051 (8th Cir. 1996)); Pritkin v.
U.S. Dep't of Energy, 47 F. Supp. 2d 1225, 1231 (E.D. Wash.
1999).

        Because the court has determined that the defendant,
having failed to plausibly allege that it incurred necessary
response costs, lacks standing to bring its § 9607 cost-recovery
claim, the court concludes that the defendant also lacks
standing to bring its derivative claim for declaratory relief
under § 9613(g)(2). Accordingly, the court will dismiss the
second cause of action for lack of subject-matter jurisdiction.

        (3)   Remaining state-law causes of action

        The defendant's three remaining causes of action for
negligence, declaratory relief under W. Va. Code § 55-13-1, and
equitable indemnity all arise under state law. See ECF No. 82
at 41-43; see also id. at 38-39 (stating that non-CERCLA claims

are state-law claims).  The defendant asserts that the court has subject-matter jurisdiction over these state-law claims "under the [c]ourt's ancillary jurisdiction because th[e] state-law claims arise from the same nucleus of operative facts as the federal claims."  Id. at 39.

The plaintiff argues that the court lacks jurisdiction over the defendant's remaining state-law claims.  The plaintiff points out that the defendant appears to assert supplemental jurisdiction over the state-law claims based on the court's federal-question jurisdiction over the defendant's federal claims and that, because those federal claims must be dismissed for lack of standing, there is no supplemental jurisdiction over the remaining state-law claims.  The defendant responds, in part, that its state-law claims are ancillary not to its own federal claims brought in the counterclaim, but to the federal claims brought by the plaintiff in its complaint.  See ECF No. 123 at 10.

Fairly read, the jurisdictional averment in the defendant's counterclaim asserts that the defendant's state-law claims are ancillary to its own federal claims brought in the counterclaim.  In this regard, the court notes that the jurisdictional allegations related to the state-law claims appear immediately after the defendant's jurisdictional

37

allegations related to its federal claims and that neither the counterclaim's jurisdictional averment nor the rest of the counterclaim purport to incorporate by reference the portions of the defendant's answer relating to jurisdiction over the plaintiff's federal claims.  See id. at 3, 38-39.  Moreover, the court notes that the portion of the defendant's answer relating to jurisdiction for the plaintiff's claims generally denies the plaintiff's jurisdictional allegations and that the defendant's fourth affirmative defense asserts that the court lacks subject-matter jurisdiction over the plaintiff's claims.  See id. at 3, 32.

To the extent the defendant asserts supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over its state-law claims based on the court's federal-question jurisdiction over the defendant's federal claims, those federal claims are subject to dismissal for lack of standing, and therefore the court may not exercise supplemental jurisdiction based on them.  See Arbaugh, 546 U.S. at 514.

To the extent the defendant asserts supplemental jurisdiction over its state-law claims based on the court's federal-question jurisdiction over the plaintiff's federal claims, the court is not persuaded.  The defendant argues that, to the extent the court has federal-question jurisdiction over

38

the plaintiff's federal claims (though, strangely, the defendant's answer denies such jurisdiction), the court ipso facto has supplemental jurisdiction over the defendant's state-law counterclaims.  See ECF No. 123 at 9.  The defendant is correct that supplemental jurisdiction over counterclaims can be premised on claims found in the complaint, but it is incorrect that, by merely exercising jurisdiction over the plaintiff's federal claims, the court necessarily has supplemental jurisdiction over the defendant's state-law counterclaims.

Under § 1367, "in any civil action of which the district courts have original jurisdiction," they may exercise supplemental jurisdiction over state-law claims that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  When, as here, no federal-question or diversity jurisdiction is asserted for the counterclaims at issue, the court assesses whether the counterclaims are "compulsory" or "permissive" to determine if it has supplemental jurisdiction over them in light of its original jurisdiction over the claims asserted in the complaint. See Painter, 863 F.2d at 331.[14]  "If [a] counterclaim is

---

[14] District courts in the Fourth Circuit continue to follow Painter as binding precedent even after the subsequent enactment of § 1367.  See Colborn v. Forest Good Eats, LLC, No. 5:19-CV-

compulsory, it is within the [supplemental] jurisdiction of the
court to entertain[,] and no independent basis of federal
jurisdiction is required." Id. "If [a] counterclaim is
permissive, however, it must have its own independent
jurisdictional bas[is]." Id.

Determining whether a counterclaim is compulsory
involves four inquiries:

> (1) Are the issues of fact and law raised in the claim
> and counterclaim largely the same? (2) Would res
> judicata bar a subsequent suit on the party's
> counterclaim, absent the compulsory counterclaim rule?
> (3) Will substantially the same evidence support or
> refute the claim as well as the counterclaim? and (4)
> Is there any logical relationship between the claim
> and counterclaim?

Id. These inquiries provide "guideline[s]" rather than a
"litmus" test, and the court need not answer all of them to
determine compulsoriness. Id. As is the case with establishing
subject-matter jurisdiction generally, see Evans, 166 F.3d at
647 Richmond, Fredericksburg, & Potomac R.R. Co., 945 F.2d at
768, the counterclaimant bears the burden of establishing that
the counterclaims are compulsory in order for the court to
exercise supplemental jurisdiction, see DirecTV v. Edwards, 293
F. Supp. 2d 873, 879 (N.D. Ind. 2003).

---

431-D, 2020 WL 5629765, at *8 (E.D.N.C. Sept. 21, 2020); see
also Ginwright v. Exeter Fin. Corp., No. TDC-16-0565, 2016 WL
5867443, at *2 (D. Md. Oct. 6, 2016) (providing rationale and
collecting cases).

Having considered the four inquiries, the court concludes that the defendant's state-law claims are not compulsory and are not so related to the plaintiff's federal claims that they form part of the same case or controversy. The plaintiff's federal claims involve the alleged release of a number of hazardous substances and wastes that have been stored or disposed, through the defendant's actions and without a permit, at the defendant's two properties and that have migrated to the surrounding environment and the plaintiff's property, causing an imminent and substantial danger to health and the environment as well as the plaintiff's incurrence of its own response costs. See ECF No. 1 ¶¶ 58-88. The defendant's state-law claims, on the other hand, involve allegations that the plaintiff failed to exercise due care in storing or disposing chemicals on the plaintiff's property, resulting in a release of the chemicals onto the plaintiff's property and requiring the defendant to incur costs assessing and monitoring the release. See ECF No. 82 at 41-43. Accordingly, the defendant's state-law claims do not involve largely the same issues of law and fact or substantially the same evidence as the plaintiff's federal claims; there is no indication that adjudication of the plaintiff's federal claims will subsequently bar the defendant from asserting the state-law claims; and, in the court's view,

41

the claims are not so logically related that they should proceed together.

The defendant has failed to meet its burden to demonstrate its state-law counterclaims are compulsory, as it presents no argument as to any of the four inquiries, and the court is not persuaded by its conclusory assertion, advanced only in passing, that the court's jurisdiction over the plaintiff's federal claims ipso facto provides supplemental jurisdiction over the defendant's state-law counterclaims.  The court thus concludes that it may not exercise supplemental jurisdiction over the defendant's state-law claims based on its federal-question jurisdiction over the plaintiff's federal claims.

Accordingly, the court will dismiss the remaining state-law claims for lack of subject-matter jurisdiction.

### III.  Conclusion

For the foregoing reasons, it is ORDERED that:

1.   the plaintiff's motion to dismiss the defendant's counterclaim and strike its affirmative defenses (EFC No. 103) be, and hereby it is granted to the extent it requests that the defendant's

counterclaim be dismissed and that the
defendant's fifteenth, thirtieth, and thirty-
first affirmative defenses be stricken and denied
to the extent is requests that the defendant's
remaining affirmative defenses be stricken;

2.    the defendant's fifteenth, thirtieth, and thirty-
first affirmative defenses (ECF No. 82 at 34, 36-
37) be, and hereby they are, stricken; and

3.    the defendant's counterclaim (ECF No. 82 at 38-
44) be, and hereby it is, dismissed without
prejudice.[15]

The Clerk is directed to transmit copies of this
memorandum opinion and order to all counsel of record and any
unrepresented parties.

ENTER: May 10, 2021

John T. Copenhaver, Jr.
Senior United States District Judge

---

[15] The plaintiff argues that the defendant's counterclaim should
be dismissed with prejudice.  See ECF No. 128 at 1-2, 5.
However, "[a] dismissal for lack of standing — or any other
defect in subject matter jurisdiction — must be one without
prejudice, because a court that lacks jurisdiction has no power
to adjudicate and dispose of a claim on the merits."  S. Walk at
Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands,
LLC, 713 F.3d 175, 185 (4th Cir. 2013).