UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

THE COURTLAND COMPANY, INC.,
a West Virginia Business Corporation,

       Plaintiff,

v.                         Civil Action Nos. 2:18-cv-01230
                                            2:19-cv-00894
                                            2:21-cv-00101

UNION CARBIDE CORPORATION,
a New York Corporation,

       Defendant.

MEMORANDUM OPINION AND ORDER

       Pending in Civil Action No. 2:18-cv-01230 ("Courtland I") are the defendant's motion to sever, filed on February 23, 2021 (ECF No. 241), and the plaintiff's motion under Fed. R. Civ. P. 42 for a phased and consolidated trial, filed on March 11, 2021 (ECF No. 251).  Pending in Civil Action No. 2:19-cv-00894 ("Courtland II") are the defendant's motion to sever, filed on February 23, 2021 (ECF No. 205), and the plaintiff's motion under Rule 42 for a phased and consolidated trial, filed on March 11, 2021 (ECF No. 216).  And pending in Civil Action No. 2:21-cv-00101 ("Courtland III") is the plaintiff's motion under Rule 42 for a phased and consolidated trial, filed on March 11, 2021 (ECF No. 25).

I.    Background

The plaintiff initiated the first of these related actions, Courtland I, by filing a complaint on August 15, 2018. See Courtland I, ECF No. 1.  The complaint alleges that the plaintiff and the defendant own adjoining parcels of real property in Kanawha County, West Virginia.  See id. ¶¶ 4-5, 14, 17.  The complaint further alleges that the defendant has used its property, called the "UCC Tech Center,"[1] to store hazardous and toxic materials, which have been released into the nearby environment including the plaintiff's property.  See id. ¶¶ 1, 14-21, 31-46.  Based on these allegations, the Courtland I complaint asserts eight causes of action: (1) recovery of response costs and declaratory relief under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9607(a), 9613(g); (2) citizen suit relief for violations of § 7002(a)(1)(A) of the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. §

---

[1] In its complaint, the plaintiff refers to the property as the "UCC Facility."  See Courtland I, ECF No. 1, passim.  The plaintiff alleges that the property is also sometimes called "the 'West Virginia Regional Technology Park,' the 'South Charleston Technology Park,' or simply the 'Technology Park.'" Id. ¶ 14.  For the sake of consistency, the court herein refers to the property as the UCC Tech Center, as it has done throughout the course of the three related actions.

6972(a)(1)(A), and the West Virginia Hazardous Waste Management Act; (3) citizen suit relief for judicial abatement of an imminent and substantial endangerment under § 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B); (4) judicial abatement of a public nuisance; (5) private nuisance; (6) negligence; (7) gross negligence; and (8) strict liability.  See ECF No. 1 ¶¶ 47-108.[2]

        The plaintiff initiated the second of these actions, Courtland II, by filing another complaint on December 13, 2019. See Courtland II, ECF No. 1.  The Courtland II complaint concerns two other parcels of real property, called the "Filmont Site"[3] and the "UCC Railyard,"[4] owned by the defendant that are also adjacent to the property owned by the plaintiff.  See id. ¶¶ 5-6, 14-15.  As in Courtland I, the plaintiff, in its Courtland II complaint, alleges that the defendant has used the Filmont Site and the UCC Railyard to store hazardous and toxic materials that have been released into the nearby environment,

---

[2] By a September 29, 2020 memorandum opinion and order, the court dismissed the plaintiff's claim for negligence per se asserted in the Courtland I complaint.  See Courtland I, ECF No. 163.

[3] The Courtland II complaint refers to the Filmont Site as the "Filmont Landfill."  See ECF No. 1, passim.  However, the plaintiff has argued that the Site should not be referred to as a landfill, and the parties have disputed the terminology to be employed.  The court uses the term "Site" herein.

[4] The parties sometimes refer to the UCC Railyard as the Massey Railyard.

including the plaintiff's adjacent property.  See id. ¶¶ 1, 17-47.  Based on these allegations, the plaintiff's Courtland II complaint asserts against the defendant nearly the same causes of action that are asserted in Courtland I: (1) recovery of response costs and declaratory relief under CERCLA; (2) citizen suit relief for violations of § 7002(a)(1)(A) of RCRA, and the West Virginia Hazardous Waste Management Act; (3) citizen suit relief for judicial abatement of an imminent and substantial endangerment under § 7002(a)(1)(B) of RCRA; (4) judicial abatement of a public nuisance; (5) judicial abatement of a public nuisance per se; (6) private nuisance; (7) negligence; (8) gross negligence; and (9) strict liability.  See id. ¶¶ 58-134.[5]

On May 19, 2020, the plaintiff filed a motion for leave to file a supplemental complaint in Courtland II in order to add citizen-suit Clean Water Act claims under 33 U.S.C. § 1365.  See Courtland II, ECF No. 33.  In an October 23, 2020 memorandum opinion and order, the court denied the motion on the

---

[5] The Courtland II complaint asserts a claim for judicial abatement of a public nuisance per se that is not asserted in the Courtland I complaint.  Compare Courtland I, ECF No. 1, with Courtland II, ECF No. 1.  As it did in Courtland I, the court, in an August 26, 2020 memorandum opinion and order, dismissed the plaintiff's claim in its Courtland II complaint for negligence per se.  See Courtland II, ECF No. 75.  Thus, aside from the additional public nuisance per se claim in Courtland II, the claims in Courtland I and Courtland II are identical.

4

ground that the plaintiff had not provided adequate pre-suit notice of the Clean Water Act claims it intended to bring, pursuant to § 1365(a)(1) and 40 C.F.R. § 135.3(a).  See Courtland II, ECF No. 125.

The plaintiff then initiated the third of these actions by filing a complaint on February 9, 2021.  See Courtland III, ECF No. 1.  The Courtland III complaint asserts the Clean Water Act claims that the plaintiff attempted to pursue by supplementing its complaint in Courtland II.  The Courtland III complaint alleges that pollutants the defendant placed at the Filmont Site and the UCC Railyard have discharged into nearby navigable waters of the United States and West Virginia, including Davis Creek and Ward Branch.  See id. ¶¶ 1, 8-10, 12-47.  Based on these allegations, the plaintiff asserts claims for citizen-suit relief under § 505 of the Clean Water Act, 33 U.S.C. § 1365, to address the defendant's alleged (1) unpermitted discharges of pollutants and (2) unpermitted stormwater discharges of pollutants.  See id. ¶¶ 48-74.

On January 31, 2020, the parties filed a joint motion asking the court to enter a stipulated order that would "coordinat[e]" Courtland I and Courtland II "under Rule 42(a)(1) and (3)" because they "involve certain common questions of law and fact."  Courtland I, ECF No. 130 at 1; id. at ECF No. 130-1

at 1; Courtland II, ECF No. 13 at 1; id. EFC No. 13-1 at 1.
Specifically, the parties asked the court to order Courtland I
and Courtland II to proceed along the same schedule but to
"reserve[] the question of whether [the two cases] shall be
joined for hearing or trial on any issue or issues under [R]ule
42(a)(1)." Courtland I, ECF No. 130-1 at 1-3; Courtland II, ECF
No. 13-1 at 1-3.  The parties also requested that the court's
order specify that "either party may seek to sever the two cases
thirty days prior to submission of dispositive motions or
trial." Courtland I, ECF No. 130-1 at 3; Courtland II, ECF No.
13-1 at 3.

     By orders entered February 19, 2020, the court granted
the parties' request to "coordinate" the schedules in Courtland
I and Courtland II.  See Courtland I, ECF No. 131; Courtland II,
ECF No. 23.  In the orders, the court expressly "reserve[d] the
question of whether" Courtland I and Courtland II would "be
joined for hearing or trial on any issue or issues under Rule
42(a)(1)" and directed that "either party may seek to sever the
two cases thirty (30) days prior to submission of dispositive
motions or trial." Courtland I, ECF No. 131 at 2; Courtland II,
ECF No. 23 at 2.

     On February 23, 2021, the defendant filed its motions
to sever Courtland I and Courtland II pursuant to Fed. R. Civ.

6

P. 21 and 42.  <u>See</u> <u>Courtland I</u>, ECF No. 241; <u>Courtland II</u>, ECF
No. 205.  On March 11, 2021, the plaintiff filed its motion to
consolidate <u>Courtland I</u>, <u>Courtland II</u>, and <u>Courtland III</u> and to
try the consolidated actions in three phases, pursuant to Rule
42.  <u>See</u> <u>Courtland I</u>, ECF No. 251; <u>Courtland II</u>, ECF No. 216;
<u>Courtland III</u>, ECF No. 25.  The motions have been fully briefed.

## II.  Legal Standards

        The plaintiff's motions seek to consolidate the trials
of the three actions and to try them together in three phases,
pursuant to Rule 42.  <u>See</u> <u>Courtland I</u>, ECF No. 251; <u>id.</u>, ECF No.
259; <u>Courtland II</u>, ECF No. 216; <u>id.</u> ECF No. 233; <u>Courtland III</u>,
ECF No. 25; <u>id.</u>, ECF No. 30.  The defendant's motions seek to
sever the trials in these actions pursuant to Rule 21 and Rule
42(b).  <u>See</u> <u>Courtland I</u>, ECF No. 242; <u>Courtland II</u>, ECF No. 206.
The court must first decide which provisions of the Federal
Rules of Civil Procedure govern the issues presented by these
motions.

## A.  <u>Rule 21 is inapplicable.</u>

        Under Rule 21, "[t]he court may . . . sever any claim
against a party."  Fed. R. Civ. P. 21.  Although Rule 21 is
typically invoked to sever improperly joined parties, it may

also be used to sever claims from each other so that the parties and the court may proceed with them separately.  See RAI Strategic Holdings, Inc. v. Altria Client Servs., LLC, No. 1:20-cv-00393-LO, 2020 WL 6882646, at *2 (E.D. Va. Sept. 3, 2020) (citing 7 Charles Alan Wright et al., Federal Practice and Procedure § 1689 (3d ed. 2021)).  However, there is a "fundamental distinction[]" between, on the one hand, severing claims into separate actions and, on the other hand, ordering separate trials for different claims or issues.  4 James Wm. Moore, Moore's Federal Practice § 21.06[1] (2021).  Severing claims under Rule 21 results in separate actions, each giving rise to separate final judgments from which separate appeals may be taken.  See id.  In contrast, ordering separate or joint trials under Rule 42 has no bearing on whether any claims are severed into different actions.  See id.  Indeed, "even . . . claims [that] have been severed under Rule 21 . . . still may be consolidated for trial under Rule 42(a)."  7 Wright et al., supra, § 1689; accord 4 Moore, supra, § 21.06[3].

The issue presented by the parties' motions is not governed by Rule 21.  A review of the parties' joint motions requesting that the court coordinate the schedules of Courtland I and Courtland II and the court's orders granting that request demonstrates that the parties did not ask for, and the court did

not order, the actions to be consolidated under Rule 42(a)(2). Because the three actions have not been consolidated, they remain separate actions. Reliance on the court's authority to sever claims into separate actions under Rule 21 is therefore misplaced.[6]

B.   Rule 42(a)(1) applies to the request for consolidated trials.

Under Rule 42(a)(1), "[i]f actions before the court involve a common question of law or fact, the court may[] . . . join for hearing or trial any or all matters at issue in the actions." Fed. R. Civ. P. 42(a)(1). As explained further herein, there remain three separate actions proceeding to three separate trials. The threshold issue presented by the parties' motions is whether the trials for the three separate actions

---

[6] Confusion regarding the applicability of Rule 21 might stem from the parties' request, and the court's agreement, that the parties may "seek to sever the two cases" at a later stage. Courtland I, ECF No. 130-1 at 3; id., ECF No. 131 at 2; Courtland II, ECF No. 13-1 at 3; id., ECF No. 23 at 2. Although Rule 21 is inapplicable here for the reasons expressed above, the term "sever," which the parties and the court employed, is typically associated with the Rule 21 procedure for separating claims into independent actions. See 4 Moore, supra, § 21.06[1]. The Rule 42(b) procedure for ordering separate trials on issues or claims, regardless of the number of actions, is typically referred to as "bifurcation." See 8 James Wm. Moore, Moore's Federal Practice § 42.20[2]-[3] (2021).

should be joined or consolidated into one trial.  Rule 42(a)(1) is the procedural vehicle that governs resolution of that issue.

As the text of Rule 42(a)(1) indicates, "a motion to consolidate must meet the threshold requirement of involving 'a common question of law or fact.'"  Pariseau v. Anodyne Healthcare Mgmt., Inc., No. 3:04-CV-630, 2006 WL 325379, at *1 (W.D.N.C. Feb. 9, 2006); accord Carolina Cargo, Inc. of Rock Hill v. Countrywide Payroll & HR Sols., Inc., Nos. 0:16-cv-03249-JMC; 0:15-cv-04629-JMC, 2017 WL 1314239, at *1-2 (D.S.C. Feb. 10, 2017); United States ex rel. Sprinkle Masonry, Inc. v. THR Enters., Inc., Nos. 2:14cv251; 2:14cv252, 2014 WL 4748527, at *2 (E.D. Va. Sept. 23, 2014); see also 9A Charles Alan Wright et al., Federal Practice and Procedure § 2382 (3d ed. 2021) ("[O]nly those actions having a common question of law or fact may be consolidated[.]  . . . Consolidation must be denied if there is no common question of law or fact tying the cases together."); 8 Moore, supra, § 42.10[2][c] ("[A] finding of common issues of law, common issues of fact, or both, is a necessary prerequisite . . . .").  If this threshold requirement is met, "proper application of Rule 42(a) requires the district court to determine 'whether the specific risks of prejudice and possible confusion' from consolidation '[a]re overborne by the risk of inconsistent adjudications, the burden on parties,

witnesses, and available judicial resources posed by multiple
lawsuits, the length of time required to conclude multiple suits
as against a single one, and the relative expense to all
concerned of the single-trial, multiple-trial alternatives.'"
Campbell v. Bos. Sci. Corp., 882 F.3d 70, 74 (4th Cir. 2018)
(ellipsis omitted) (quoting Arnold v. E. Air Lines, Inc., 681
F.2d 186, 193 (4th Cir. 1982), rev'd on other grounds, 712 F.2d
899 (4th Cir. 1983) (en banc)).

C.   **Rule 42(b) applies to the request for a phased trial.**

     Under Rule 42(b), "the court may order a separate
trial of one or more separate issues[] [or] claims[]" "[f]or
convenience, to avoid prejudice, or to expedite and economize."
Fed. R. Civ. P. 42(b).  Rule 42(b) bifurcation is "designed" to
"allow[] the court to select specified claims or issues and
decide them before proceeding to other matters in the same
case."  8 Moore, supra, § 42.20[1] (2021); see id. § 42.20[2]
(explaining that Rule 42(b) authorizes courts to "separately
consider[] certain claims or issues while holding others in
abeyance in a single lawsuit").  Thus, Rule 42(b) is applicable
when bifurcation is sought for issues or claims that are set to
be adjudicated together in the same trial.

     To the extent the parties' motions concern separating
the trial of each one of the three actions from the trials of

the other two actions, Rule 42(b) is inapplicable.  As the court
has already explained, the three actions here have not been
consolidated under Rule 42(a)(2): they remain three separate
actions.  Further, the trials for each of the actions have not
been joined.  This much is clear from the court's orders
expressly "reserv[ing] the question of whether" Courtland I and
Courtland II would "be joined for hearing or trial on any issue
or issues under Rule 42(a)(1)," which governs consolidation of
trials.  Courtland I, ECF No. 131 at 2; Courtland II, ECF No. 23
at 2.  Thus, as things stand, there are three separate actions
proceeding toward three separate trials.[7]  The Rule 42(b)
procedure for ordering separate trials is thus not applicable to
the extent the parties seek an order separating each action's
trial from the other actions' trials.

          Assuming the trials of the three actions are
consolidated under Rule 42(a)(1), however, then Rule 42(b) would
apply to the plaintiff's request for a phased trial.  See

---

[7] The defendant seems to believe that, as it stands, the parties'
dispositive motions must address the claims in both Courtland I
and Courtland II in a single, combined filing and that its
motions to sever are necessary so that it may file separate
dispositive motions in Courtland I and Courtland II.  See
Courtland I, ECF No. 242 at 2-3, 11; id., ECF No. 253 at 2, 11;
Courtland II, ECF No. 206 at 2-3, 11; id., ECF No. 219 at 2, 11.
For the reasons explained herein, the dispositive motions
proceedings in Courtland I and Courtland II have not been
joined, and the parties may file separate dispositive motions in
the respective actions.

*Courtland I*, ECF No. 251; *Courtland II*, ECF No. 216; *Courtland III*, ECF No. 25.  Bifurcating trial under Rule 42(b) should only be resorted to if, based on informed discretion, the court determines bifurcation will achieve the purposes of convenience, avoiding prejudice, or expedition and economization.  See *Toler v. Gov't Emps. Ins. Co.*, 309 F.R.D. 223, 225 (S.D.W. Va. 2015) (citing 9A Wright et al., *supra*, § 2388 (3d ed. 2008)).  The party requesting a bifurcated trial "bears the burden of convincing the court that such an exercise of discretion will" achieve the purposes of Rule 42(b).  *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 975 (4th Cir. 2020).

## III. Discussion

### A.    Rule 42(a)(1) request for consolidated trials

The court first addresses the plaintiff's request to consolidate the three actions' trials, which as explained earlier is governed by Rule 42(a)(1).  Under Rule 42(a)(1), the court first inquires whether the actions meet the threshold requirement of involving a common question of law or fact and then proceeds to assess the relative risks arising from the requested consolidation.

13

1.   <u>Common questions of law or fact</u>

As to the threshold requirement, the court concludes that the three actions involve common questions of law or facts. <u>Courtland I</u> and <u>Courtland II</u> involve identical parties[8] and nearly identical causes of action concerning the same general underlying allegations, <u>i.e.</u>, that the defendant, over the course of roughly the same time period, used three parcels of land, all in close proximity to one another, to store toxic and hazardous materials, which have since migrated to the surrounding environmental media, namely, nearby ground water, surface water, and soil,[9] and thereby have caused harm to the plaintiff's interests in the enjoyment of its property, which abuts all three of the defendant's properties, as well as to the

---

[8] <u>See</u> <u>Clayton v. Dist. of Columbia</u>, 36 F. Supp. 3d 91, 94 (D.D.C. 2014) ("When multiple cases involving the same parties and same issues are pending simultaneously in the same court, one solution is to consolidate them."); <u>Hanes Cos., Inc. v. Ronson</u>, 712 F. Supp. 1223 (M.D.N.C. 1988) ("'[A]ctions involving the same parties are apt candidates for consolidation.'" (quoting 9C Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 2384 (1971))); 8 Moore, <u>supra</u>, § 42.10[6][b] ("The presence of overlapping parties in cases enhances the prospects for consolidation . . . .").

[9] <u>See</u> 8 Moore, <u>supra</u>, § 42.10[6][a] ("Consolidation frequently will be permitted when there are causes of a like nature, or relative to the same question" (internal quotation marks omitted)).

health and safety of the public.[10]  The two cases involve common questions, such as, among others, whether and to what extent (1) the defendant placed toxic and hazardous materials at the three properties, (2) such materials have migrated to the surrounding environmental media, (3) the materials' migration has interfered with the plaintiff's property interests, and (4) the materials' migration has affected the health and safety of the public. Likewise, Courtland III involves the same parties, and, although it presents a different cause of action, it concerns the same allegations that the defendant used the Filmont Site and the UCC Railyard to store toxic and hazardous materials during roughly the same period, which have since migrated to the surrounding environment, particularly the waters of the United States and West Virginia.  Accordingly, Courtland III involves many of the same legal and factual questions at issue in Courtland I and Courtland II.

        The court is not persuaded by the defendant's arguments that the cases do not involve common questions of law or facts.  The court emphasizes in this regard that the defendant has previously "stipulate[d]" that Courtland I and Courtland II "involve certain common questions of law and fact"

---

[10] See 8 Moore, supra, § 42.10[6][a] ("Claims arising pursuant to the same or similar tangible or intangible property interests . . . are . . . candidates for consolidation.").

for purposes of consolidation under Rule 42.  Courtland I, ECF
No. 130-1 at 1; Courtland II, ECF No. 13-1 at 1.  The defendant
has offered no reason why the court should not be able to
conclusively rely on its unambiguous stipulation.  See Minter v.
Wells Fargo Bank, N.A., 762 F.3d 339, 347 (4th Cir. 2014); Meyer
v. Berkshire Life Ins. Co., 372 F.3d 261, 264-65 (4th Cir.
2004).  Even overlooking the defendant's stipulation and
considering its arguments, however, the court would conclude
that the three actions involve common questions of law or fact.

First, the defendant argues that commonality is
lacking between Courtland I and Courtland II because the UCC
Tech Center at issue in Courtland I is governed exclusively by
RCRA, while the Filmont Site and UCC Railyard at issue in
Courtland II are governed exclusively by CERCLA.  The court
rejects this argument because it is not appropriately raised in
the current motions.  The plaintiff's Courtland I and Courtland
II complaints together assert both RCRA and CERCLA claims as to
all three of the defendant's properties, and the court has
previously denied the defendant's Fed. R. Civ. P. 12(b) motions
to dismiss the RCRA claims asserted in Courtland I and Courtland
II.  See Courtland I, ECF No. 13; id., ECF No. 163; Courtland

16

II, ECF No. 9; id., ECF No. 75.[11]  If the defendant seeks a
ruling that the UCC Tech Center is not governed by CERCLA (and,
thus, that the CERCLA claim asserted in Courtland I is subject
to dismissal) and that the Filmont Site and the UCC Railyard are
not governed by RCRA (and, thus, that the RCRA claims asserted
in Courtland II are subject to dismissal), the proper vehicle
for obtaining such a ruling is through a Rule 12(b) or a
summary-judgment motion.  The court will not countenance in the
current motions what amounts to the defendant's backdoor attempt
to obtain dismissal of Courtland I's CERCLA claim and Courtland
II's RCRA claims.[12]

        Second, the defendant argues that the evidence
regarding the UCC Tech Center at issue in Courtland I differs
from the evidence regarding the Filmont Site and the UCC
Railyard at issue in Courtland I and Courtland II.  The
defendant points to its experts' reports, which state that
contaminants from the Filmont Site and the UCC Railyard have not
affected the plaintiff's property and that contaminants from the

_____

[11] The defendant's motions did not seek dismissal of the CERCLA
claims asserted in Courtland I and Courtland II.

[12] Further, even if the court were to credit the defendant's
argument regarding the inapplicability of CERCLA and RCRA to
Courtland I and Courtland II, respectfully, the court observes
that the defendant completely ignores the commonality arising
from the other claims in the complaints, which are nearly
identical.

UCC Tech Center have not commingled with contaminants from the
Filmont Site and UCC Railyard.  To bolster the experts'
conclusions, the defendant further points out that the reports
also state that the UCC Tech Center occupies a geological,
hydrogeological, and topographical location that differs from
that of the Filmont Site and the UCC Railyard, namely, that the
UCC Tech Center lies on a plateau atop a cliff up-gradient from
the plaintiff's property, while the Filmont Site and the UCC
Railyard are side-gradient to, or down-gradient from, the
plaintiff's property.

        The court is not persuaded by this argument.  Whether
contaminants from the defendant's properties have affected the
plaintiff's property is a sharply contested issue.  As the
plaintiff points out, its own expert's report contradicts the
conclusions reached by the defendant's experts.  The court will
not rely solely on the opinions of the defendant's experts on
that issue in deciding these motions.

        Third, the defendant argues that Courtland III's Clean
Water Act claims involve questions of law and fact that are
distinct from the legal and factual questions at issue in the
claims pursued in Courtland I and Courtland II.  The defendant
notes that the court has denied the plaintiff's attempt to
pursue these same Clean Water Act claims in Courtland II and has

prevented the plaintiff from obtaining discovery on those claims in the Courtland II proceedings.  See Courtland II, ECF No. 125; id., ECF No. 147; id., ECF No. 225; id., ECF No. 229; id., ECF No. 238.

The court is not persuaded by this argument.  Although Courtland III's Clean Water Act claims involve elements that are somewhat different than the elements of the claims brought in Courtland I and Courtland II, the proof of the elements of both the Clean Water Act claims and the claims in Courtland II will involve nearly identical factual questions.

Finally, the defendant argues that Rule 42(a)(2) consolidation requires more than merely "some" common questions of law or fact; rather, the defendant argues, the cases at issue must be "virtually identical."  Courtland I, ECF No. 257 at 7-8 (emphasis in original); accord Courtland II, ECF No. 230 at 7-8; Courtland III, ECF No. 28 at 7-8.  The defendant asserts that the dissimilarities among the three actions demonstrates that they are not virtually identical and thus that their consolidation would be improper.

The court again is not persuaded.  As an initial matter, the cases on which the defendant chiefly relies for the proposition that Rule 42(a)'s commonality requirement requires the cases to be virtually identical involve motions to

consolidate entire actions rather than merely trials.  See
Hughes-Brown v. Campus Crest Grp., LLC, No. 3:10-CV-366, 2011 WL
475010, at *2 (W.D.N.C. Feb. 4, 2011) (citing Harris v. L & L
Wings, Inc., 132 F.3d 978, 980-82 & n.2 (4th Cir. 1997));
Sizemore v. Sw. Reg'l Jail Auth., No. 1:08cv0035, 2009 WL 90108,
at *1-2 (W.D. Va. Jan. 14, 2009) (citing Harris, 132 F.3d at
980-82 & n.2).  More importantly, Harris, the Fourth Circuit
decision to which these cases ultimately cite, does not require
that actions for which consolidation is sought must be virtually
identical to satisfy the threshold commonality requirement.
Rather, in a two-sentence footnote, the Harris court stated that
cases involving "claims, brought against the same defendant,
relying on the same witnesses, alleging the same misconduct, and
answered with the same defenses, clearly meet" the commonality
requirement.  Harris, 132 F.3d at 981 n.2 (emphasis added).
Harris does not state or suggest that cases must be virtually
identical to satisfy the commonality requirement.  Rather, it
holds, at most, that cases that are virtually identical would
easily surpass that requirement.

        Although virtually identical cases would clearly meet
the threshold commonality requirement, see id., the court
recognizes some authority, which the defendant also cites, might
be understood to suggest that cases sharing only superficial or

20

minimal commonality might not satisfy that requirement, <u>see</u>
<u>Gaddy v. Elmcroft Assisted Living</u>, Nos. 3:04CV36; 3:04CV309;
3:04CV458, 2005 WL 2989658, at *1 (W.D.N.C. Nov. 2, 2005)
(denying consolidation when "three cases involve <u>some</u> common
questions of law and fact, [but] are separate and distinct
cases" (emphasis in original)); 8 Moore, <u>supra</u>, § 42.10[2][c]
(discussing "insufficient" questions of law or fact).  For
purposes of the current motions, however, the court is satisfied
that the three actions at issue here share sufficiently common
questions of law or fact to meet the threshold requirement.

    2.   <u>Risk determination</u>

       With respect to the risks of unfair prejudice and
confusion resulting from a consolidation of the three actions'
trials, the defendant argues chiefly that the jury would find it
difficult to separate evidence relating to the UCC Tech Center
on the one hand from evidence relating to the Filmont Site and
the UCC Railyard on the other hand.  Specifically, the defendant
asserts that many of the plaintiff's state law claims will be
tried to a jury[13] and argues that a jury would have difficulty

---

[13] With respect to the state law claims, the parties dispute
whether the plaintiff's public nuisance claim in <u>Courtland I</u> and
its public nuisance and public nuisance <u>per se</u> claims in
<u>Courtland II</u> are to be tried to a jury, but they appear to agree
that the plaintiff's remaining state law claims are to be tried
to a jury.  <u>See Courtland I</u>, ECF No. 248 at 4-5; <u>id.</u>, ECF No.

retaining the information presented during a lengthy trial involving all the three actions' claims as to each of the defendant's three properties while also discerning and recalling which evidence is relevant to each of the properties.  The defendant argues it would be unfairly prejudiced if evidence relating to the UCC Tech Center influenced the jury's decision regarding the Filmont Site and the UCC Railyard, or vice versa.[14]

---

253 at 2-3; Courtland II, ECF No. 214 at 4-5; id., ECF No. 219 at 2-3.  With respect to the federal claims, the plaintiff asserts, and the defendant does not dispute, that no jury right attaches to the plaintiff's CERCLA claims.  See United States v. Godley, No. 3:19-cv-00202-RJC-DSC, 2020 WL 4507324, at *6 (W.D.N.C. Aug. 5, 2020).  Similarly, the plaintiff asserts, and the defendant does not dispute, that there is no jury right for its RCRA or Clean Water Act claims except in limited respects. See Tull v. United States, 481 U.S. 412 (1987); N.C. Envt'l Justice Network v. Taylor, No. 4:12-CV-154-D, 2014 WL 7384970, at *1-4 (E.D.N.C. Dec. 29, 2014); Dublin Scarboro Improvement Ass'n v. Hartford Cty., 678 F. Supp. 129, 132 (D. Md. 1988). Thus, to a large extent, the parties are not in dispute as to which matters are to be presented to a jury, and the court proceeds to decide the current motions on the basis of the parties' apparent agreement in this regard.  However, the question of what matters will be presented to a jury has yet to be conclusively determined.

[14] The defendant raises two additional arguments that can be addressed briefly.  First, the defendant argues that RCRA should be applicable only to Courtland I, that CERCLA should be applicable only to Courtland II (as the court explained earlier, RCRA and CERCLA claims are raised in both Courtland I and II), that the Clean Water Act is applicable only to Courtland III, and thus that the jury's consideration of RCRA, CERCLA, and the Clean Water Act claims in a consolidated trial of all three actions would be unfairly prejudicial.  As explained in the preceding footnote, however, there appears no dispute that a jury right does not attach to the plaintiff's CERCLA claims or, except to a limited extent, its RCRA or Clean Water Act claims.

Although there may be some risk of jury confusion, the court concludes that the defendant's concerns are overstated. Jury confusion is an inescapable risk for each of these three cases, regardless of consolidation.  Thus, in the court's view, little is gained in terms of reducing the confusion and prejudice the defendant fears by keeping the trials separated. Rather, the court believes that the kind of confusion and prejudice animating the defendant's concerns can be best mitigated through careful presentation by the parties, an appropriate verdict form, and instructions.  See Johnson v. Celotex Corp., 899 F.2d 1281, 1285 (2d Cir. 1990) ("When considering consolidation, a court should also note that the risks of prejudice and confusion may be reduced by the use of cautionary instructions to the jury and verdict sheets outlining

---

Second, the defendant argues that Courtland III is in a nascent state so that consolidation would require the defendant either to forego necessary discovery in Courtland III or to allow Courtland I and Courtland II to grow stale while awaiting the completion of discovery in Courtland III.  The court notes, however, that the defendant has represented that Courtland III could be ready for trial within the first quarter of 2022.  See Courtland I, ECF No. 257 at 2-3; Courtland II, ECF No. 230 at 2-3; Courtland III, ECF No. 28 at 2-3.  In addition, the court, upon the parties' joint motions, see Courtland I, ECF No. 262; Courtland II, ECF No. 240, has continued the trials for both Courtland I and Courtland II to a time that accommodates Courtland III's schedule.  Thus, the basis for this argument appears to have dissipated.

the claims of each plaintiff." (citing Arnold, 681 F.2d at
193)).

        The court also takes note of the efficiencies to be
gained by consolidating the three actions' trials.  Contrary to
the defendant's conclusory argument that no efficiencies inhere,
the court concludes that, at a minimum, consolidated trials
would likely reduce the overall time, burden, and expense for
the court, the parties, and witnesses in preparing for and
holding three separate trials.  Additionally, consolidation
would likely obviate the need for the parties to triplicate
their efforts in presenting evidence regarding, among other
things, (1) the conditions of the plaintiff's property and the
surrounding environment, (2) the extent of the plaintiff's
injury arising from the conditions allegedly imposed by the
defendant on its property, and (3) the fault of the plaintiff
and nonparties in causing the complained-of conditions on the
property.  Further, as the plaintiff points out, the defendant
has identified at least six potential witnesses who might be
called to testify in both the Courtland I and Courtland II
trials, including Jerome Cibrik, who serves as the defendant's
Fed. R. Civ. P 30(b)(6) designee in both cases.  Compare
Courtland I, ECF No. 248-1, and Courtland II, ECF No. 214-1,
with Courtland I, ECF No. 248-2, and Courtland II, ECF No. 214-

1.  Presumably, some, if not all, of the same six witnesses would be called to testify in <u>Courtland III</u>.  Presenting these witnesses' testimony in a consolidated trial would be more efficient for all involved than would be calling them to testify at three separate trials.

In sum, having considered the specific risks of prejudice and possible confusion from consolidating the trials in the three actions, the court concludes those risks are outweighed by the probable efficiencies to be gained from consolidation.  Accordingly, the court grants the plaintiff's motions to the extent they seek to consolidate the three actions' trials into a single trial.

B.    <u>Rule 42(b) request for a phased trial</u>

In its motions, the plaintiff also requests that the consolidated trial of the three actions be tried in three phases, as follows:

- Phase I would commence in summer 2021 and be for all equitable claims to be tried to the court;

- Phase II would commence in fall 2021 and be for the civil-penalty provisions of RCRA and the Clean Water Act, for which liability is tried to a jury and the penalty amount is tried to the court; and

- Phase III would commence in winter 2021 and 2022 and be for all remaining legal claims tried to a jury.

See <u>Courtland I</u>, ECF No. 251; <u>Courtland II</u>, ECF No. 216;
<u>Courtland III</u>, ECF No. 25.

      The court observes that the plaintiff's motions
provide only a barebones analysis of, and no authority
supporting, its requested phased-trial trifurcation, <u>see</u>
<u>Courtland I</u>, ECF No. 251; <u>Courtland II</u>, ECF No. 216; <u>Courtland</u>
<u>III</u>, ECF No. 25, and that its reply briefs do not meaningfully
address the defendant's arguments opposing this requested
trifurcation, <u>see Courtland I</u>, ECF No. 259; <u>Courtland II</u>, ECF
No. 233; <u>Courtland III</u>, ECF No. 30.  Thus, the plaintiff has
failed to meet its burden to convince the court that the
requested trifurcation would achieve the purposes of Rule 42(b).
<u>See McKiver</u>, 980 F.3d at 975.

      The court further observes that the phased-trial
approach the plaintiff requests would greatly diminish the
efficiencies gained from the consolidation granted herein, which
the plaintiff also requested, and perhaps would result in even
greater burdens on the parties, the court, and witnesses than
would inhere from holding separate trials for the three actions.
Thus, the court doubts that the requested trifurcation would
achieve "convenience," "avoid prejudice," or "expedite and
economize" these actions, as required.  Fed. R. Civ. P. 42(b).
For these reasons, the court denies the plaintiff's motions to

the extent they seek to split the consolidated trial into three phases.

IV.   Conclusion

        For the foregoing reasons, it is ORDERED that the defendant's motions to sever (<u>Courtland I</u>, ECF No. 241; <u>Courtland II</u>, ECF No. 205) be, and hereby they are, denied.[15]   It is further ORDERED that the plaintiff's motions for phased and consolidated trial (<u>Courtland I</u>, ECF No. 251; <u>Courtland II</u>, ECF No. 216; <u>Courtland III</u>, ECF No. 25) be, and hereby they are, granted to the extent they request that the trials in <u>Courtland I</u>, <u>Courtland II</u>, and <u>Courtland III</u> be consolidated and denied to the extent they request a phased trial.

---

[15] The court notes that the defendant filed motions to continue the scheduled deadlines in <u>Courtland I</u> and <u>Courtland II</u>.  <u>See</u> <u>Courtland I</u>, ECF No. 240; <u>Courtland II</u>, ECF No. 204.  The defendant has represented that, if the court granted the requested continuance, it would withdraw its motions to sever and perhaps renew them following the close of discovery in <u>Courtland I</u> and <u>Courtland II</u>.  <u>See</u> <u>Courtland I</u>, ECF No. 240 at 1 n.1; <u>id.</u>, ECF No. 242 at 2 n.1; <u>Courtland II</u>, ECF No. 204 at 1 n.1; <u>id.</u>, ECF No. 206 at 2 n.1.  On the parties' joint motions, <u>see</u> <u>Courtland I</u>, ECF No. 262; <u>Courtland II</u>, ECF No. 240, the court has this date entered orders continuing the schedules' deadlines beyond the dates requested by the defendants' motions and denied the defendants' motions for continuance as moot.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: May 25, 2021

John T. Copenhaver, Jr.
Senior United States District Judge