UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

THE COURTLAND COMPANY, INC.,
a West Virginia Business Corporation,

        Plaintiff and
        Counterdefendant,

v.                              Civil Action No. 2:19-cv-00894

UNION CARBIDE CORPORATION,
a New York Corporation,

        Defendant and
        Counterclaimant.

<u>MEMORANDUM OPINION AND ORDER</u>

        Pending is Defendant Union Carbide Corporation's

("UCC") Rule 15 Motion for Leave to File an Amended Answer and

Re-Alleged Counterclaims (ECF 271), filed July 17, 2021.

Plaintiff The Courtland Company, Inc. ("Courtland"), responded

in opposition on August 4, 2021. (ECF 274).

I.  Background

        The parties are corporations owning parcels of real

property near Davis Creek in Kanawha County, West Virginia.  <u>See</u>

ECF 1 ¶¶ 5-6, 15, 25; ECF 82 ¶¶ 5-6, 15, 25.  Courtland

instituted this action on December 13, 2019, alleging UCC

utilized two of its properties -- located adjacent to

Courtland's property -- to store hazardous and toxic materials, which have released into the nearby environment, including Courtland's property.  See ECF 1 ¶¶ 1, 14-57.

Courtland asserts three federal claims based on these allegations: (1) recovery of response costs and declaratory relief pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9607(a), 9613(g); (2) citizen-suit relief for violations of § 7002(a)(1)(A) of the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6972(a)(1)(A), and the West Virginia Hazardous Waste Management Act; and (3) citizen-suit relief for judicial abatement of an imminent and substantial endangerment pursuant to § 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B). See ECF 1 ¶¶ 58-88.  Courtland also asserts state-law claims for judicial abatement of a public nuisance, judicial abatement of a public nuisance per se, private nuisance, negligence, gross negligence, and strict liability.  See id. ¶¶ 89-134.[1]

Following the disposition of UCC's motion to dismiss, on September 9, 2020, UCC answered the complaint and asserted thirty-eight affirmative defenses and five counterclaims, including claims under CERCLA and various state-law claims.  See

---

[1] The Court previously dismissed Courtland's Count VIII negligence per se claim.  See ECF 75 at 45-46, 55.

ECF 82.  On September 30, 2020, Courtland moved to dismiss UCC's counterclaims and strike its affirmative defenses.  See ECF 103.

On May 10, 2021, the Court struck UCC's fifteenth, thirtieth, and thirty-first affirmative defenses and dismissed the five claims asserted in its counterclaim without prejudice. See ECF 250 at 43.  As to the CERCLA claims, the Court found UCC had failed to allege sufficient facts demonstrating the necessity under CERCLA of the investigation costs for which it sought recovery or contribution.  See id. at 33-36.  The Court thus concluded UCC "failed to plausibly assert a cognizable injury in fact" and lacked standing to bring the CERCLA claims under 42 U.S.C. §§ 9607(a), 9613(f), and 9613(g) as alleged. See id. at 34.  Given the dismissal of the federal claims, the Court additionally concluded it lacked pendent jurisdiction over the related state-law claims. See id. at 36-42.

On July 21, 2021, UCC filed the instant motion, seeking leave to file its amended answer and re-alleged counterclaims.  UCC alleges the following facts in support of its amended counterclaims.  Courtland has been the owner and/or operator of its property since January 4, 1980, on which it "does or has leased the property for, inter alia, the storage and disposal of raw coal, fly ash, diesel fuel, concrete timber, and other materials."  ECF 271-1 at 41, ¶ 20.  Additionally,

Courtland's property has been previously used to store coal and as an unpermitted dump for construction and debris waste and is presently used for the "storage and apparent disposal of construction waste and other fill on the Courtland property." ECF 271-1 at 39, ¶ 11.  In December 2020, UCC undertook an investigation of soils on Courtland's property to determine the source or all sources of environmental impact thereon and whether the Courtland property could be a source of the alleged impacts to its groundwater.  See id. ¶¶ 8-9.

UCC's soil investigation was comprised of "soil borings in periphery areas mostly on the side of the property that abuts the UCC property and test pit borings in the interior of the operations area on the Courtland property where borings would be dangerous."  Id. at 39-40, ¶ 12.  UCC alleges the borings and test pits revealed evidence of coal material and buried metal and debris, respectively.  See id.  UCC's soil samples from both the borings and test pits on the Courtland property detected the following metals and organic chemicals:

> 1,2 Dichloroethane, 1,2 Dibromoethane, 1,1,2
> Trichloroethane, Acetone, Benzene, Carbon
> Tetrachloride, Cyclohexane, Ethylbenzene, Methyl Ethyl
> Ketone (2-Butanone), Trichloroethene, Toluene, o
> Xylene, m,p Xylene, total Xylene, Aluminum, Antimony,
> Arsenic, Barium, Beryllium, Cadmium, Chromium, Cobalt,
> Copper, Lead, Manganese, Mercury, Nickel, Selenium,
> Sodium, Thallium, Vanadium, Zinc, 1,1 Biphenyl,
> Acenaphthylene, Anthracene, Benzo(a)anthracene,

> Benzo(a)pyrene, Benzo(b)fluoranthene,
> Benzo(g,h,i)perylene, Benzo(k)fluoranthene, Chrysene,
> Dibenzo(a,h)anthracene, Dibenzofuran, Fluoranthene,
> Fluorene, Indeno(1,2,3-cd)pyrene, Naphthalene,
> Phenanthrene and Pyrene.

Id. at 41, ¶ 13.  UCC alleges a substantial number of these substances "exceed applicable regulatory limits set for the protection of human health and the environment."  Id. ¶ 15.  It further alleges the presence of such substances in the soil medium (1) "confirms Courtland is a source of impacts to groundwater", and (2) indicates "that Courtland is at least partially responsible for environmental impacts on the Courtland property and potentially the UCC property."  Id. ¶¶ 14-15.

As a result of this investigation, UCC incurred costs of $169,391.58, which it alleges "are reasonable and necessary costs under CERCLA which relate directly to the determination of the nature, scope, and source of environmental impacts on the Courtland property, the likely impact to human health and environment, what the scope of response or remediation could entail, and which parties bear responsibility for those costs." Id. at 40-41, ¶¶ 16-17.

UCC re-alleges the following counterclaims based on these factual allegations: (1) recovery of its response costs under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a); (2) contribution from Courtland under Section 113(f) of CERCLA, 42

U.S.C. § 9613(f); (3) declaratory relief under Section 113(g) of
CERCLA, 42 U.S.C. § 9613(g); (4) a state-law negligence claim;
(5) declaratory relief under W. Va. Code § 55-13-11; and (6) a
state-law claim for equitable indemnity.  See id. at 41-46, ¶¶
18-49.  In its motion for leave to amend, UCC contends (1) it
has cured the factual deficiencies previously found by the Court
in its May 2021 order, and (2) Courtland would not be prejudiced
by the amended answer and counterclaims.  See ECF 271.

        Courtland responds UCC's motion should be denied
inasmuch as (1) the motion is untimely, and (2) UCC failed to
cure the deficiencies previously identified by the Court,
rendering the amended counterclaims futile.  See ECF 274.
Specifically, Courtland contends UCC again fails to properly
plead facts sufficient to support its CERCLA claims and thus
lacks standing to bring the same.  See id.  As a result,
Courtland avers UCC's remaining, amended state-law claims fail
for lack of subject-matter jurisdiction.  See id.

## II.  Governing Standard

        Pursuant to Federal Rule of Civil Procedure 15, "a
party may amend its pleading once as a matter of course within
(A) 21 days after serving it, or (B) if the pleading is one to
which a responsive pleading is required, 21 days after service

of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1)(A)-(B).

Otherwise, "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave," which should be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  A motion for leave to amend should only be denied when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile."  Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (internal quotations omitted).

"A proposed amendment is futile when it is clearly insufficient or frivolous on its face . . . [or] if the claim it presents would not survive a motion to dismiss."  Save Our Sound OBX, Inc. v. N.C. Dep't of Transp., 914 F.3d 213, 228 (4th Cir. 2019) (internal citation and quotation marks omitted).  In other words, although motions to amend "should be granted liberally, a district court may deny leave [to amend on futility grounds] . . . if the proposed amended [pleading] fails to satisfy the requirements of the federal rules."  United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th

Cir. 2008) (internal quotation marks omitted); <u>see also</u> <u>Katyle</u> <u>v. Penn Nat. Gaming, Inc.</u>, 637 F.3d 462, 471 (4th Cir. 2011).

### III.   Discussion

### A.   Timeliness of Motion

Courtland first contends UCC's motion is untimely, in turn rendering the proposed amendments prejudicial.  The parties' deadline to amend their pleadings was May 29, 2020. <u>See</u> ECF 23.  As Courtland notes, however, UCC was not noticed that its alleged counterclaims were defective until the Court's May 10, 2021, disposition of Courtland's motion to dismiss.  <u>See</u> ECF 250.  Nonetheless, Courtland avers UCC's motion should be deemed untimely inasmuch as "UCC waited over ten (10) weeks after that Order, until July 21, 2021 -- a month after fact discovery had closed and a mere nine (9) days prior to the closing of expert discovery -- to request . . . leave to amend its counterclaims."  ECF 274 at 3.  Courtland asserts such delay is prejudicial as it deprives Courtland of the opportunity to conduct fact discovery on the proposed, amended counterclaims and to develop countervailing expert opinions.

UCC responds no prejudice arises from its amended counterclaims inasmuch as Courtland has been on notice of the

same since September 9, 2020, when the counterclaims were first alleged. <u>See</u> ECF 82. The Court agrees. UCC's initial counterclaims were dismissed without prejudice and no deadline to submit amendments thereto was supplied by the Court. Additionally, UCC's re-alleged counterclaims have not been substantively altered -- only more particularly pled -- from those first alleged, nor have any additional claims been pursued. Courtland has thus been on notice of UCC's proposed counterclaims for over a year and cannot now plausibly assert prejudice arising from the same provided that adequate time for discovery is preserved. Accordingly, the Court concludes UCC's proposed amendments are neither untimely nor unduly prejudicial.

## B.  Futility of Re-Alleged Counterclaims

Courtland next contends UCC's re-alleged counterclaims are futile inasmuch as they are insufficiently pled, thus warranting denial of its motion to amend. The Court will address each counterclaim independently.

### 1.  CERCLA Counterclaim I: Cost-Recovery

UCC's first re-alleged counterclaim asserts a cost-recovery claim under 42 U.S.C. § 9607(a), Section 107(a) of CERCLA. Courtland first contends that UCC has yet again failed

to demonstrate standing to bring this claim inasmuch as it has failed to plausibly allege a cognizable injury in fact.

"The standing doctrine derives from 'the Constitution's limitation on Article III courts' power to adjudicate cases and controversies'", thus "implicat[ing] the court's subject matter jurisdiction." <u>South Carolina v. United States</u>, 912 F.3d 720, 726 (4th Cir. 2019) (quoting <u>Frank Krasner Enters v. Montgomery Cty.</u>, 401 F.3d 230, 234 (4th Cir. 2005)). "To establish Article III standing, 'a [claimant] must show (1) it has suffered an injury in fact . . .; (2) the injury is fairly traceable to the challenged action of the [counter-]defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" <u>Id.</u> (quoting <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 180-81 (2000)).

An injury in fact "refers to the invasion of some 'legally protected interest' arising from constitutional, statutory, or common law." <u>Pender v. Bank of Am. Corp.</u>, 788 F.3d 354, 366 (4th Cir. 2015) (quoting <u>Lujan v. Defs. Of Wildlife</u>, 504 U.S. 555, 559-60 (1992)). "Indeed, the [legally protected] interest may exist 'solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" <u>Id.</u> (quoting <u>Lujan</u>, 504 U.S. at 578). "Thus, 'standing is

gauged by the specific common-law, statutory[,] or constitutional claims that a party presents.'" Id. (quoting Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund, 500 U.S. 72, 77 (1991)).

In assessing standing at the pleading stage, the court accepts as true allegations in the pleadings that are supported by adequate factual matter to render them plausible on their face. See Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The same presumption of truth does not apply to conclusory statements and legal conclusions contained in the pleading. See id. (citing Iqbal, 556 U.S. at 678). "A [claimant] has the burden to 'demonstrate standing for each claim [it] seeks to press' and 'for each form of relief' sought." Outdoor Amusement Bus. Assoc., Inc. v. Dep't of Homeland Sec., 983 F.3d 671, 680 (4th Cir. 2020) (quoting Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008)).

To establish a prima facie case for a cost-recovery claim under Section 9607(a), a private claimant must establish the following elements: "(1) the [party sued] is a potentially responsible person ("PRP"); (2) the site constitutes a 'facility'; (3) a 'release' or a threatened release of hazardous substances exists at the 'facility'; (4) the [claimant] has

11

incurred costs responding to the release or threatened release of hazardous substances ('response costs'); and (5) the response costs conform to the National Contingency Plan." <u>PCS Nitrogen Inc. v. Ashley II of Charleston LLC</u>, 714 F.3d 161, 167-68 (4th Cir. 2013).

Further, a private claimant must also show that the response costs it incurred were necessary. <u>See</u> 42 U.S.C. § 9607(a)(4)(B) (imposing liability upon PRPs "for . . . <u>necessary</u> costs of response by any [private] person" (emphasis added)); <u>see also</u> <u>Westfarm Assocs. Ltd. P'ship v. Wash. Suburban Sanitary Comm'n</u>, 66 F.3d 669, 677 (4th Cir. 1995) (noting cost-recovery elements and stating the claimant must show it incurred necessary response costs); <u>Nurad, Inc. v. William E. Hooper & Sons Co.</u>, 966 F.3d 837, 841, n.2 (4th Cir. 1992) (noting Section 9607(a)(4)(B) "provides that costs will be recoverable only if they are 'necessary.'").

While our court of appeals has not addressed what constitutes necessary response costs, courts have "generally agreed that [the 'necessary'] standard requires that an actual and real threat to human health or the environment exist before initiating a response action." <u>Carson Harbor Vill., Ltd. v. Unocal Corp.</u>, 270 F.3d 863, 871 (9th Cir. 2001) (en banc) (collecting cases); <u>accord</u> <u>Reg'l Airport Auth. Of Louisville v.</u>

LFG, LLC, 460 F.3d 697, 703 (6th Cir. 2006); <u>Ashley II of
Charleston, LLC v. PCS Nitrogen, Inc.</u>, 791 F. Supp. 2d 431, 480
(D.S.C. 2011).  Additionally, courts have concluded that --
primarily relying on CERCLA's definitional language --
investigatory costs such as "environmental studies of a facility
undertaken to 'monitor, assess, and evaluate' the release of
hazardous substances'" qualify as necessary response costs.
<u>Northwestern Mut. Life Ins. Co. v. Atlantic Research Corp.</u>, 847
F. Supp. 389, 396 (E.D. Va. 1994); <u>see also</u> <u>Rhodes v. Cty. of
Darlington</u>, S.C., 833 F. Supp. 1163, 1188 (noting "courts have
held that investigatory activities such as monitoring and
sampling are within the purview of 'necessary response costs,'
and are therefore recoverable."); <u>HRW Sys., Inc. v. Wash. Gas
Light Co.</u>, 823 F. Supp. 318, 341 (D. Md. 1993) (concluding the
plaintiff's investigation of the contaminated property fell
"under the rubric of 'necessary costs.'").

        UCC has alleged that it has "incurred costs of
$169,391.58 for the investigation and analysis of soils and
source materials on the Courtland property."  ECF 271-1 at 41, ¶
8.  As noted, this investigation is alleged to have revealed the
presence of an array of metals and organic chemicals, a number
of which are asserted to "exceed applicable regulatory limits
set for the protection of human health and the environment."

<u>Id.</u> at 40, ¶¶ 13, 15.  UCC alleges the costs it incurred were necessary as they "related directly to the determination of the nature, scope, and source of environmental impacts on the Courtland property, the likely impact to human health and the environment, what the scope of response or remediation could entail, and which parties bear responsibility for those costs." <u>Id.</u> at 40-41, ¶ 17.  Moreover, it has alleged that such costs were necessary to "identify [PRPs], to comment on the proposed remedy and to propose alternative remedial measures that more effectively address the releases and/or threatened releases and migration of the releases."  <u>Id.</u> at 42, ¶ 30.

Courtland is correct that a claimant's unilaterally incurred costs in deciding to investigate potentially harmful or unlawful actions of another typically cannot, by themselves, comprise a cognizable injury for purposes of standing to bring suit.  <u>See</u> <u>Clapper v. Amnesty Int'l USA</u>, 568 U.S. 398, 416 (2016).  As previously noted, however, Congress may statutorily create a legally protected interest that, when invaded, constitutes a legally cognizable injury.  <u>See</u> <u>Pender</u>, 788 F.3d at 366.  CERCLA creates a legally protected interest in the recovery of necessary response costs, the incurrence of which may constitute a cognizable injury in fact.  <u>See</u> <u>City of Spokane v. Monsanto Company</u>, 237 F. Supp. 3d 1086, 1091-3 (E.D. Wash.

14

2017) (concluding the incurrence of necessary response costs under CERCLA constitutes an injury in fact).  Inasmuch as UCC has plausibly alleged that it has incurred such costs under CERCLA, it has adequately asserted a cognizable injury in fact for standing purposes.

Insofar as Courtland contends UCC has failed to plead sufficient facts supporting the third element of its Section 9607(a) claim, the Court disagrees.  As noted above, UCC is required to allege, inter alia, that "a 'release' or a threatened release of hazardous substances exists" at the Courtland property.  PCS Nitrogen, 714 F.3d 161 at 167.  CERCLA defines a "release" as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment." 42 U.S.C. § 9601(22).  "Clearly, this definition contemplates a broad, remedial view of how hazardous substances can find their way into the environment without their affirmative discharge by an owner or operator of a facility."  Rhodes, 833 F. Supp. 1163 at 1178.  As such, "only minimal thresholds are necessary to demonstrate a release."  Id.  In fact, a claimant need not even "allege the precise manner of the release" to make out a prima facie cost-recovery claim.  Coppola v. Smith, 935 F. Supp. 2d. 993, 1009 (E.D. Cal. 2013).  Additionally, "at the pleading

stage, a time frame [of the alleged release or threat of release] need not be alleged with pinpoint precision, but a general time frame to the best of [the claimant's] ability, should be included."  Id.

UCC has alleged that Courtland's historical use of its property "is responsible for some or all of the environmental impacts" thereon.  ECF 271-1 at 39, ¶ 7.  UCC further alleges Courtland's property, since Courtland became the owner and/or operator in January of 1980, has been used "to store coal and as an unpermitted dump for construction debris and waste", for "the storage and apparent disposal of construction waste and other fill", and for "the storage and disposal of raw coal, fly ash, diesel fuel, concrete, timber, and other materials."  Id. at 39, 41, ¶¶ 11, 20.  It is alleged these activities "contributed to the release or threatened release of Hazardous Substances [as] defined in CERCLA Section 101(14) & (22), 42 U.S.C. Section 9601(14) & (22), which were and are generated, stored, and disposed on, in and under the Courtland Property."  Id. at 41, ¶ 21.  UCC specifically identifies the hazardous substances found and alleges numerous of them "exceed applicable regulatory limits for the protection of human health and the environment." Id. at 40, ¶¶ 13, 15.  The Court notes that a number of these identified substances, for example, Acetone; 1,2 Dichloroethane;

16

Benzene; Cadmium; Carbon Tetracholoride; Cyclohexanone;
Ethylbenzene; Benzo[b]fluoranthene; Benzo[a]anthracene;
Benzo[a]pyrene; and Dibenzo[a,h]anthracene, are deemed hazardous
substances under 40 C.F.R. § 302.4.  <u>See</u> 40 C.F.R. § 302.4(a)
("The elements and compounds and hazardous wastes appearing in
table 302.4 are designated as hazardous substances under section
102(a) of [CERCLA].").

     These factual allegations are sufficient to establish
the third element of UCC's claim at this stage.  The Court thus
concludes UCC has plausibly alleged its cost-recovery
counterclaim under Section 9607(a).

     2.  CERCLA Counterclaim II: Contribution

     UCC's second re-alleged counterclaim asserts a
contribution claim under 42 U.S.C. § 9613(f)(1), Section
113(f)(1) of CERCLA.  This section permits "[a]ny person [to]
seek contribution from another person who is liable or
potentially liable under section 9607(a) . . . during or
following any civil action . . . under section 9607(a)."  <u>PCS
Nitrogen</u>, 714 F.3d at 186; <u>see also</u> <u>Cooper Industries, Inc. v.
Aviall Services</u>, Inc., 543 U.S. 157, 168 (2004).  In other
words, Section 9613(f)(1) permits a PRP to seek "contribution
against 'any other person who is liable or potentially liable

under section 9607(a)' for response costs."  Crofton Ventures

Ltd. P'ship v. G & H P'ship, 258 F.3d 292, 296 (4th Cir. 2001).

To establish a prima facie case for contribution under

Section 9613(f)(1), a claimant must establish essentially the

same elements as required for a cost-recovery claim under

Section 9607(a).  See Blasland, Bouck & Lee, Inc., v. City of N.

Miami, 283 F.3d 1286, 1302 (11th Cir. 2002) (noting "[i]n either

a section [9607] direct cost recovery action or a section [9613]

contribution action, the elements of the [claimant's] prima

facie case are the same."); N.J. Turnpike Auth. v. PG Indus.,

Inc., 197 F.3d 96, 104 (3d Cir. 1999) (stating "the elements of

both claims are essentially the same."); Prisco v. A & D Carting

Corp., 168 F.3d 593, 603 (2d Cir. 1999) (noting "[t]he elements

of an action under § [9613] are the same as those under §

[9607].").

Inasmuch as the Court has already determined that UCC

has adequately pled a cost-recovery claim pursuant to Section

9607(a), the same is thus true for its contribution claim under

Section 9613(f)(1).  Additionally, it is undisputed that

Courtland has subjected UCC to a Section 9607(a) action.  To the

extent Courtland contends UCC's contribution claim fails given

that UCC is not facing a Section 9607(a) claim for releases at

and from the Courtland property but only in connection with

18

releases at UCC's Filmont Landfill and Massey Railyard, such contention is unavailing.

"Section 9613(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under . . . [Section 9607(a)]." United States v. Atlantic Research Corp., 551 U.S. 128, 129 (2007). Courtland instituted its Section 9607(a) action against UCC alleging, inter alia, that the release of hazardous substances from UCC's landfill and railyard have affected the surrounding environment, including Courtland's own property. See, e.g., ECF 1 at 14 ¶¶ 32, 33. Additionally, Courtland alleges "since no operation historically conducted at the Courtland property could have contributed the presence of these contaminants to the environment, the sole plausible source of these contaminants on the Courtland property, within environmental media underlying that property, and in the vicinity thereof is the migration of such contaminants from one or more of the UCC Facilities." Id. at 21 ¶ 41.

UCC of course disputes this contention and alleges Courtland's historical use of its property "is at least partially responsible" for the environmental impacts thereon "and potentially the [environmental impacts on the] UCC property." See ECF 271-1 at 40, ¶ 14. Thus, by instituting its

contribution action against Courtland, UCC - - as a PRP for the
alleged contamination of the Courtland Property and surrounding
environment - - is alleging Courtland shares in any potential
liability stemming from that same harm.  This is precisely the
type of action Section 9613(f)(1) contemplates.  The Court thus
concludes UCC has sufficiently alleged a permissible
contribution action under Section 9613(f)(1).

### 3.  Alternative Pleading of § 9607(a) and § 9613(f)(1) Claims

Having concluded UCC has properly pled claims under
both Sections 9607(a) and 9613(f)(1), the more complicated
question remains as to whether UCC is permitted to plead both
claims in the alternative.  Courtland contends UCC is not
entitled to simultaneously pursue both a cost-recovery claim and
a contribution claim, while UCC conversely avers it may plead
both claims alternatively at this stage but recognizes it may
only recover under one theory.

The law governing the interplay between Section
9607(a) and Section 9613(f) is muddled.  Indeed, "[d]efining the
relation between cost-recovery suits under [Section 9607(a)] and
contribution actions under [Section 9613(f)] has proven vexing
for courts."  NCR Corp. v. George A. Whiting Paper Co., 768 F.3d
682, 690 (7th Cir. 2014).  And "navigating the interplay between

[both sections] remains a deeply difficult task." <u>Agere Sys.,
Inc. v. Advanced Envtl. Tech. Corp.</u>, 602 F.3d 204, 218 (3d Cir.
2010).  In <u>Atlantic Research</u>, the Supreme Court attempted to
clarify the relationship between cost-recovery actions and
contribution actions under CERCLA, recognizing both actions
"provide two 'clearly distinct' remedies."  <u>Atl. Research Corp.</u>,
551 U.S. at 138 ("CERCLA provide[s] for a right to cost recovery
in certain circumstances, § [9607(a)], and separate right to
contribution in other circumstances, §§ [9613(f)(1),
9613(f)(3)(B)].'") (quoting <u>Cooper Indus., Inc.</u>, 543 U.S. at 163
n.3.)).  The High Court went on to summarize the distinction as
follows:

> [T]he remedies available in §§ [9607(a) and 9613(f)]
> complement each other by providing causes of action to
> persons in different procedural circumstances . . .
> Section [9613(f)] authorizes a contribution action to
> PRPs with common liability stemming from an action
> instituted under . . . § [9607(a)].  And § [9607(a)]
> permits cost recovery (as distinct from contribution)
> by a private party that has itself incurred cleanup
> costs.

<u>Id.</u> at 139 (internal citations omitted).  Despite this
clarification, "the Supreme Court [did] not directly address[ ]
the concurrent availability of" both causes of action.  <u>PCS
Nitrogen, Inc. v. Ross Development Corp.</u>, 104 F. Supp. 3d 729,
739 (D.S.C. 2015).

Following the decision in <u>Atlantic Research</u>, several "courts of appeals have addressed the availability of a [cost-recovery] claim where a party also has a contribution claim under § [9613(f)]." <u>Id.</u> (citing <u>Hobart Corp. v. Waste Mgmt. of Ohio, Inc.</u>, 758 F.3d 757, 767 (6th Cir. 2014) ("holding 'a PRP, which has entered into an administrative settlement with the government, thereby having met a statutory trigger for filing a contribution action, can bring only a § [9613(f)(3)(B)] action for contribution - - not a § [9607(a)(4)(B)] cost-recovery action'"); <u>Solutia, Inc. v. McWane, Inc.</u>, 672 F.3d 1230, 1236–37 (11th Cir. 2012) ("holding that a PRP could not assert a § [9607(a)] claim if it possessed a § [9613(f)(3)(B)] contribution claim"); <u>Morrison Enters., LLC v. Dravo Corp.</u>, 638 F.3d 594 (8th Cir. 2011) ("'§ [9613] provides the exclusive remedy for a liable party compelled to incur response costs pursuant to an administrative or judicially approved settlement under § 106 or [§ 9607].'"); <u>Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.</u>, 596 F.3d 112, 128 (2d Cir. 2010) ("holding that where a PRP's claims fell within the more specific requirements of § [9613(f)(3)(B)] and Congress apparently amended CERCLA to provide for such claims in § [9613], allowing the PRP to proceed under § [9607(a)] where it had a valid claim under § [9613(f)(3)(B)] would 'nullify the ... amendment and abrogate the requirements Congress placed on contribution claims under §

[9613]'"); <u>Agere Sys., Inc.</u>, 602 F.3d at 229 (3d Cir. 2010)

("holding that plaintiffs 'who, if permitted to bring a §

[9607(a)] claim, would be shielded from contribution

counterclaims under § [9613(f)(2)] do not have any § [9607(a)]

claims for costs incurred pursuant to consent decrees in a

CERCLA suit'")).

    As noted by UCC in its reply brief, however, such

decisions are of limited guidance, as these cases addressed the

interplay between cost-recovery claims under Section 9607(a) and

contribution claims under Section 9613(f)(3)(B)[2], not

contribution claims under Section 9613(f)(1) as UCC has brought

here.

    The situation here, although not identical, shares

material characteristics with the situation faced by the United

States District Court for the District of South Carolina in <u>PCS</u>

<u>Nitrogen, Inc. v. Ross Development Corp</u>, 104 F. Supp. 729

(D.S.C. 2015).  In <u>PCS Nitrogen</u>, the claimant instituted both a

cost-recovery action under Section 9607(a) and a contribution

---

    [2] Section 9613(f)(3)(B) provides: "A person who has resolved
its liability to the United States or a State for some or all of
a response action or for some or all of the costs of such action
in an administrative or judicially approved settlement may seek
contribution from any person who is not party to a settlement
referred to in [Section 9613(f)(2)]."  As UCC has not entered
into any such settlement, Section 9613(f)(3)(B) is inapplicable
here.

action under Section 9613(f)(1) against the defendants.  <u>See</u> <u>id.</u>
The defendants asserted, like Courtland does here, that the
claimant could not simultaneously bring both claims.  <u>Id.</u> at
738.  The court ultimately agreed, concluding that because the
claimant had faced a previous Section 9607(a) cost-recovery
action, it had met one of the statutory triggers entitling it to
bring its Section 9613(f)(1) contribution claim and was thus
foreclosed from simultaneously bringing a claim under Section
9607(a) for cost-recovery.  <u>Id.</u> at 743.  In reaching this
conclusion, the court relied heavily upon the "more sweeping
rule" articulated by the Sixth Circuit in <u>Hobart Corp</u>, 758 F.3d
at 767,[3] "that the remedies provided by [Section 9607(a)] and
[Section 9613(f)] are entirely separate and that no PRP may
proceed under both provisions."  The Court agrees that the
"<u>Hobart</u> court's rationale for this conclusion is cogent and

---

[3] The <u>PCS Nitrogen</u> court recognized that the <u>Holbart Corp.</u>
decision involved a contribution claim brought pursuant to
Section 9613(f)(3)(B), as opposed to subsection 9613(f)(1), but
found its "more sweeping" rationale to encompass contribution
claims brought pursuant to Section 9613(f)(1). <u>See</u> <u>PCS Nitrogen</u>,
F. Supp. 3d at 741 (noting "[i]n <u>Hobart Corp. v. Waste</u>
<u>Management. of Ohio, Inc.</u>, the Sixth Circuit not only concluded
that Sections [9607](a)(4)(B) and [9613](f)(3)(B) provide
mutually exclusive remedies, . . . but also went on to hold in
general terms that if a PRP meets any one of § [9613(f)]'s
statutory triggers then a PRP must proceed under § [9613(f)] and
not under § [9607(a)].") (internal quotations omitted)).

bears quotation at length." PCS Nitrogen, 104 F. Supp. 3d at

741.  The Hobart court explained as follows:

> CERCLA's text and structure lead us to conclude that
> PRPs must proceed under § [9613(f)] if they meet one
> of that section's statutory triggers.  Section
> [9607(a)] sets out a PRP's liability, which the
> Supreme Court has interpreted to include liability to
> another PRP for response costs incurred by that PRP.
> Atl. Research, 551 U.S. at 135–37, 127 S.Ct. 2331.
> Given this existing liability, the Court has inferred
> a cause of action, allowing any liable PRP to recover
> costs incurred.  Id.  Section [9613(f)], in contrast,
> is an explicit authorization for certain PRPs to file
> an action for contribution.  See Cooper Indus., 543
> U.S. at 165–66, 125 S.Ct. 577.  In Cooper Industries,
> the Court held that a PRP must demonstrate that
> certain preconditions were met before proceeding under
> § [9613(f)].  Id.  If § [9613(f)]'s enabling language
> is to have bite, though, it must also mean that a PRP,
> eligible to bring a contribution action, can bring
> only a contribution action.  Given the choice, a
> rational PRP would prefer to file an action under §
> [9607(a)(4)(B)] in every case.  Section
> [9607(a)(4)(B)] likely provides a broader avenue for
> recovery ... and has a longer limitations period than
> § [9613(f)], see § [9613](g)(2)-(3).  There would be
> no reason to limit § [9613(f)]'s availability if PRPs
> have § [9607(a)(4)(B)] as a fall-back option, and we
> generally do not interpret congressional enactments to
> render certain parts of these enactments superfluous.
> See, e.g., Ransom v. FIA Card Servs., N.A., 562 U.S.
> 61[, 70], 131 S.Ct. 716, 178 L.Ed.2d 603 (2011).
> Therefore, it is sensible and consistent with the text
> to read § [9613(f)]'s enabling language to mean that
> if a party is able to bring a contribution action, it
> must do so under § [9613(f)], rather than § [9607(a)].

Hobart Corp., 758 F.3d at 767.  Finding this rationale

persuasive, the Court concludes UCC is foreclosed from

simultaneously bringing its cost-recovery claim and contribution

claim.

As previously noted, Section 9613(f)(1) permits "[a]ny person [to] seek contribution from another person who is liable or potentially liable under section 9607(a) . . . <u>during or following any civil action</u> . . . under section 9607(a)." <u>PCS Nitrogen</u>, 714 F.3d 161 at 186 (emphasis added).  It is undisputed that UCC has instituted its 9613(f)(1) contribution claim during Courtland's civil action under Section 9607(a). Accordingly, UCC has satisfied "one of the statutory triggers entitling it to bring a [Section 9613(f)] contribution claim" and is thus "not entitled also to bring a [Section 9607(a)] claim."  <u>PCS Nitrogen</u>, 104 F. Supp. 3d at 743; <u>see also</u> <u>NCR Corp.</u>, 768 F.3d at 690 (noting "[i]f a party already has been subjected to an action under . . . [Section 9607] . . . it must proceed under [Section 9613(f)].").

Furthermore, UCC is correct that Federal Rule of Civil Procedure 8 permits alternative pleading of mutually exclusive and inconsistent claims.  Rule 8(d)(2) pertinently provides that "[i]f a party makes alternative statements, the pleading is sufficient <u>if any one of them is sufficient</u>." Fed. R. Civ. P. 8(d)(2) (emphasis added).  Here, however, UCC's Section 9607(a) cost-recovery claim is insufficient as it is foreclosed by its Section 9613(f) contribution claim as explained in detail above.

Accordingly, the Court concludes permitting UCC to re-allege its Section 9607(a) claim would be futile.  It is therefore ORDERED that UCC's motion to re-allege its counterclaims be, and hereby is, GRANTED with respect to its Section 9613(f) contribution claim and DENIED as to its Section 9607(a) cost-recovery claim.

    **4.  CERCLA Counterclaim III: Declaratory Judgment**

UCC's third re-alleged counterclaim seeks declaratory relief under 42 U.S.C. § 9613(g), Section 113(g) of CERCLA. Section 9613(g) pertinently provides "[i]n any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."  42 U.S.C. § 9613(g)(2).

Courtland contends UCC's Section 9613(g) action is not viable in the absence of a valid predicate claim under either Section 9607(a) or Section 9613(f), thus warranting denial of its leave to amend the same.  Inasmuch as the Court has determined UCC is entitled to proceed on its contribution counterclaim pursuant to Section 9613(f), it may pursue its

Section 9613(g) counterclaim for declaratory judgment.[4]  It is
therefore ORDERED that UCC's motion to re-allege its
counterclaims with respect to its Section 9613(g) claim be, and
hereby is, GRANTED.


              5.  Remaining State-Law Counterclaims


        In counterclaims four through six, UCC re-alleges
state-law claims for negligence, declaratory relief, and
equitable indemnity.  Courtland contends these claims fail given
that UCC's re-alleged federal CERCLA claims are deficient and

_____

        [4] The Court notes there has been some discussion as to
whether declaratory judgment is permitted in connection with a
Section 9613(f) claim, with some litigants contending such
relief is only permissible in connection with a Section 9607(a)
claim.  Courts, however, appear to have rejected this
contention, concluding declaratory judgment is permissible in
connection with a Section 9613(f) contribution claim.  See,
e.g., GenCorp, Inc. v. Olin Corp., 390 F.3d 433, 450 (6th Cir.
2004)(concluding "that requests for declaratory judgments
concerning future response costs in [Section 9607(a)] and
[Section 9613(f)] suits must be treated alike."); United States
v. Davis, 261 F.3d 1, 46 (1st Cir. 2001) (taking "the position .
. . that § 9613(g)(2), the declaratory judgment provision of
CERCLA, applies to § 9613(f) contribution actions for both past
and future response costs."); Boeing Co. v. Cascade Corp., 207
F.3d 1177, 1191 (9th Cir. 2000) (noting that while Section
9613(g)(2) "is silent on whether declaratory judgments are
authorized in contribution actions" the statute "does not
prohibit them."); Tosco Corp. v. Koch Indus., 216 F.3d 886, 897
(10th Cir. 2000) (concluding declaratory judgment in connection
with a Section 9613(f) contribution claim was appropriate).  The
issue is of little moment here, however, as Courtland concedes
in its response that a Section 9613(f) contribution claim
constitutes an appropriate predicate claim for declaratory
judgment under Section 9613(g)(2).  See ECF 274 at 13.

thus cannot serve to confer supplemental jurisdiction over UCC's state-law claims.  In light of the Court's conclusion that UCC has alleged viable federal claims under CERCLA, supplemental jurisdiction over UCC's related state-law claims is proper pursuant to 28 U.S.C. § 1367.  It is therefore ORDERED that UCC's motion to re-allege its counterclaims with respect to its three state-law claims be, and hereby is, GRANTED.

### IV.   Conclusion

Based upon the foregoing, UCC's Rule 15 Motion for Leave to File an Amended Answer and Re-Alleged Counterclaims (ECF 271) be, and hereby is, GRANTED except that the Section 9607(a) counterclaim is DENIED.  The court STRIKES the Section 9607(a) counterclaim, labeled as Counterclaim I in UCC's proposed amended answer, but not the text contained therein. The Clerk is directed to file UCC's proposed amended answer, affirmative defenses, and counterclaim. (ECF 271-1).

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: October 22, 2021

John T. Copenhaver, Jr.
Senior United States District Judge