IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE COURTLAND COMPANY, INC., a West Virginia Business Corporation, <br><br> Plaintiff and Counterdefendant, <br><br> v. <br><br> UNION CARBIDE CORPORATION, a New York Corporation, <br><br> Defendant and Counterclaimant, | ) ) ) ) ) ) ) ) ) ) ) ) ) No. 2:19-cv-00894 <br><br> *Electronically filed* |

**COUNTERDEFENDANT, COURTLAND COMPANY, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO COUNTERCLAIMANT, UNION CARBIDE CORPORATION'S COUNTERCLAIMS**

NOW COMES, Counterdefendant, The Courtland Company, Inc. ("Counterdefendant" or "Courtland Company"), pursuant to Rule 56, Federal Rules of Civil Procedure, and moves this Honorable Court for summary judgment in its favor as to Union Carbide Corporation's counterclaims as set forth below.

### I. Factual Background

Plaintiff and Counterdefendant, Courtland Company, commenced this action alleging various counts against Defendant and Counterclaimant, Union Carbide Corporation ("UCC" or "Counterclaimant") on or around December 13, 2019. [ECF No. 1]. The claims in Courtland Company's Complaint generally allege that UCC violated provisions of Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), as well as other federal statutory laws and state common and statutory laws, specifically for its release or contamination of Courtland Company's soils, groundwater, and surface water with such toxins as 1,4-dioxane,

biphenyl, 2,6-di-tert-butyl-p-cresol, isophorone, phenyl ether, arsenic, chromium, lead, mercury, etc.… After initially having dismissed UCC's Courtclaims without prejudice, on July 21, 2021, UCC file a Rule 15 Motion for Leave to File an Amended Answer and Re-Alleged Counterclaims. [ECF No. 271]. The Courtland Company filed its Response in Opposition to UCC's Rule 15 Motion for Leave to File an Amended Answer and Re-Alleged Counterclaims on August 4, 2021. [ECF No. 274].

On October 22, 2021, this Honorable Court issued its Memorandum Opinion and Order as to UCC's Rule 15 Motion for Leave to File an Amended Answer and Re-Alleged Counterclaims, whereby the Court denied the Motion as to UCC's Section 9607(a) Counterclaim but granted the motion as to the remaining Counterclaims. [ECF No. 302]. On October 22, 2021, UCC's Amended Answer, Affirmative Defenses, and Counterclaim were filed pursuant to the Memorandum Opinion and Order filed that day. [ECF No. 304]. On December 3, 2021, Counterdefendant, Courtland Company, filed its Answer to UCC's Amended Counterclaims denying liability. [ECF No. 320].

With Counterclaim Section 9607(a) denied and stricken in the Court's October 22, 2021 Order, the remaining UCC Counterclaims are:

1. CERCLA Section 113(f);
2. CERCLA Section 113(g) Declaratory Judgment;
3. Negligence;
4. Declaratory Relief Under WV Law; and
5. Equitable Indemnity.

UCC has failed to adequately support any of its remaining Counterclaims. UCC has failed to establish any liability on the part of Courtland Company, which may entitle it to contribution or indemnity. UCC has failed to show that it is entitled to Response Costs, specifically attorneys' fees or experts' fees. And finally, UCC has failed to meet the "Public Participation" requirements

of the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP") for a valid CERCLA claim. For these reasons, summary judgment should be entered in favor of Counterdefendant, Courtland Company, and UCC's remaining Counterclaims should be dismissed with prejudice.

## II. Legal Standard

Summary judgment shall be granted when a moving party has shown "[that] the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating to the district court that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party makes this showing, the opposing party must set forth specific facts showing there is a general issue for trial. Id. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. Id. "A mere scintilla of evidence is not enough to create a fact issue." Barwick v. Celotex Corp., 736 F.2d 946, 989-59 (4th Cir. 1984) (citations omitted). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, 477 U.S. 242, 249-50 (1986) (internal citations omitted).

## III. Law & Argument

### A. UCC has Failed to Establish that Courtland Company is a Liable Party

UCC is seeking contribution from Courtland Company under § 113(f). CERCLA § 113(f) allows a party to seek contribution from other jointly and severally liable parties but only for liability imposed upon it under CERCLA § 106 or CERCLA 107(a). Cooper Indus., Inc. v. Aviall Services, Inc., 543 U.S. 157, 161 (2004); United States v. Atlantic Research Corp., 551 U.S. 128,

133 (2007). The contribution remedy provided by section 113(f) serves to allocate, in an equitable fashion, the "common liability among liable parties." Atlantic Research, 551 U.S. at 138-39. Stated differently, the section 113(f) claimant and the section 113(f) defendant must share common (*i.e*., joint and several) liability for a common harm. Id. The section 113(f) claimant "does not incur its own costs of response" and thus does not seek equitable allocation of response costs it has incurred. Id. at 139. "[B]y reimbursing response costs paid by other parties, the PRP [potentially responsible party] has not incurred its own costs of response and therefore cannot recover under § 107(a)." Rather having been compelled to reimburse others, under CERCLA § 106 or CERCLA § 107(a), the section 113(f) claimant seeks contribution from those who share with it liability for the same harm. Id.

Notwithstanding that fact that UCC is implicitly admitting that it is responsible for the release of Hazardous Substances by pleading a § 113(f) Counterclaim against Courtland Company, UCC has put forth no evidence demonstrating that Courtland Company is liable for any response costs under CERCLA. UCC is heavily relying on the expert analyses and opinions of Charles H. MacPherson, Jr., who has authored multiple reports in this case and the associated lawsuits involving Courtland Company and UCC. In UCC's Opening Expert Report of Charles H. MacPherson, Jr., Mr. MacPherson offers the following opinion:

> There are other detectable concentrations, along with Hazardous Substances, in both the soil and groundwater on the Courtland Company property, that require the owners and operators to be responsible for the completion of a compliant Remedial Investigation/ Feasibility Study to determine the extent of these Hazardous Substances on the property.

(*See* MacPherson Opening Report 1/5/2021, Opinion #2, p. 19, **Exhibit A**). UCC has done no independent examination or testing of groundwater or surface water on Courtland Company's property to support a theory that Courtland Company is jointly and severally liable for the release

of Hazardous Substance into those water sources. MacPherson even admits this is in his deposition when he is asked whether there were any other indications that alleged contamination from Courtland property could be potentially affecting or impacting UCC property. He states that "until… at least three wells are put in and some potentiometric surfaces are drawn up and samples collected, you can't say conclusively one way or another about groundwater." *(See* MacPherson Deposition Transcript 5/5/2021, pp 98-99, **Exhibit C**). MacPherson's opinions rely upon the data and studies conducted by Courtland Company's experts, and he reaches the redundant conclusion that data shows what it shows *(i.e.,* groundwater at/on/near Courtland Company's property contains Hazardous Substances). To the extent the sampling of groundwater or surface water is even addressed by UCC, it is limited to UCC's experts questioning the methods utilized or well placement for sampling conducted by Courtland Company's expert with no counter sampling data to refute or support the claims being made in this case. (*See* pp. 22-24, **Exhibit A**).

UCC's Counterclaims do not plead that Courtland Company actually or potentially caused the release of Hazardous Substances impacting the groundwater or surface water in this case. Furthermore, UCC has put forth no such evidence as to the contamination of groundwater or surface water on the part of Courtland Company. UCC's investigation of Courtland Company's property was limited to soil sampling, which reached a general conclusion that there may be "detectable concentrations of chemicals, along with Hazardous Substances … that require …a compliant [NCP] Remedial Investigation/ Feasibility Study to determine the extent of these Hazardous Substances on the property" (*See* p. 19, **Exhibit A**).

Even in UCC's Counterclaim, UCC merely indicates that it investigated soils on Courtland Company's property in or around December 2020. There was no independent testing of groundwater or surface water. Without supporting evidence to show that Courtland Company is

*also* at fault for the release of Hazardous Substance, which would thereby trigger § 113(f)'s contribution remedy, UCC has failed to establish that contribution is warranted in this case. Moreover, the failure to establish the essential causation element is fatal to UCC's Counterclaims for Negligence, Declaratory Judgment, and Equitable Relief. As such, Courtland Company is entitled to summary judgment as to all of the remaining claims, and UCC's Counterclaims for CERCLA Section 113(f) relief, CERCLA Section 113(g) Declaratory Judgment, Negligence, Declaratory Relief under West Virginia Law, and Equitable Indemnity should be dismissed with prejudice.

### B. UCC is Not Entitled to Attorneys' Fees, Experts' Fees, and/or Other Alleged Response Costs

UCC's Counterclaim Prayer for Relief seeks "reasonable costs and attorneys' fees and experts' fees incurred to identify PRPs and to monitor, assess, and evaluate the release or threat of release of Hazardous Substances in and at the Courtland Property and as a result of having to respond to and bring this action." UCC's latest contention is that it has incurred $200,917.50 in costs "in its continuing efforts to comply with the requirements of the NCP, bringing the current total of NCP compliant costs spent by UCC to $200,917.50." *(See* MacPherson Second Supplemental Report 9/3/2021, p. 16). The general rule is that attorney's fees and litigation costs generally are not a recoverable "absent explicit congressional authorization." Runyon v. McCrary, 427 U.S. 160, 185 (1976) (*citing* Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247 (1975). Recognition of the availability of attorney's fees therefore requires a determination that "Congress intended to set aside this longstanding American rule of law." Runyon, 427 U.S. at 185-86. "Neither CERCLA § 107, the liabilities and defenses provision, nor § 113, which authorizes contribution claims, expressly mentions the recovery of attorney's fees." Key Tronic Corp. v. United States, 511 U.S. 809, 815 (1994).

In <u>Key Tronic Corp. v. United States</u>, the Supreme Court answered the question of whether litigation expenses and attorney's fees are proper for a cost recovery action. 511 U.S. at 811. In that case, the plaintiff sought litigation expenses and attorney's fees for a cost recovery action it had initiated against the United States. <u>Id</u>. at 812. The plaintiff wanted to recoup litigation expenses and attorney's fees for three types of legal services: (i) identification of other PRPs (including the government) that were liable for clean up; (ii) preparation and negotiation of agreements with the EPA; (iii) and prosecution of the litigation. <u>Id</u>. Using the language of Section 107(a) of CERCLA which states that a PRP is liable for "any . . . necessary costs of response incurred by any other person consistent with the national contingency plan," the district court held that the plaintiff could pursue litigation expenses and attorney's fees against the United States. <u>Id</u>. at 812-13.

The Ninth Circuit Court of Appeals reversed, however, concluding that a litigant could not recover litigation expenses and attorney's fees for a private cost recovery action because Congress had not explicitly authorized that right. <u>Id</u>. at 813. Ultimately, the Supreme Court affirmed in part and reversed in part the decision of the lower court. The Supreme Court agreed with the Ninth Circuit that CERCLA did not support plaintiff's claim for litigation expenses and attorney's fees for both the preparation and negotiation of agreements with the EPA and the prosecution of the litigation generally. <u>Id</u>. at 819-20. The Supreme Court did indicate that some claims for attorney's fees could be recoverable, reasoning that some legal work that is closely tied to the actual cleanup of a contaminated cite, such as identifying other PRPs, may constitute a necessary costs of response under Section 107(a) of CERCLA. <u>Id.</u> at 820. As such, the Court held that attorney's fees for identifying PRPs are a recoverable cost of response distinguishable from ***litigation expenses***. <u>Id</u>.

This rationale has been followed in other appellate cases as well. *See* <u>Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.</u>, 228 F.3d 275, 292-94 (3rd Cir. 2000) (affirming a district court's finding that consulting fees for which a party was seeking reimbursement were litigation-related expenses and did not fall within the definition of "necessary costs of response".) (internal citations omitted); *see also* <u>Redland Soccer Club, Inc. v. Department of the Army</u>, 55 F.3d, 827, 848-50 (3rd Cir. 1995) (affirming a district court's dismissal of plaintiffs' claims for response costs, including attorney's fees, expert witness fees and health risk assessment costs under CERCLA).

In this case, UCC is also making claims for litigation expenses in the form of attorneys' fees and experts' fees associated with its Counterclaims. UCC has alleged that, as of September 3, 2021, it has incurred costs of $200,917.50[1] for investigation and analysis of *soils* and source materials on the Courtland property. While UCC is attempting to disguise this monetary expense as an NCP complaint cost, it is clearly a litigation expense related to their defense of Courtland Company's claims, and the factually unsupported Counterclaims it has pled against Courtland Company. By way of example, a recent invoice, which was submitted in support of MacPherson's Second Supplemental Report, identifies Mr. MacPherson's work related to this matter as:

> ***"Litigation Support Services, The Courtland Company vs. Union Carbide Corporation, U.S. District Court for the Southern District of West Virginia, Case No. 2:19-CV-00894"***

*(See* Attachment "A" to MacPherson Second Supplemental Report 9/3/2021, **Exhibit B**).

As previously established, UCC has not produced any evidence to show that Courtland Company is a jointly liable party and/or liable for contribution in this case. While fees may be recoverable for identifying PRPs (*See* <u>Key Tronic Corp.</u>, *supra*), the underlying requirement of

---

[1] UCC's Counterclaim initially pled $169,391.58 (UCC's Counterclaim, ¶ 16 [Dkt. No. 204]).

recouping the costs associated with identifying PRPs, is actually establishing a PRP from whom to collect fees.

UCC's contention that it should be awarded the $200,917.50 it has incurred is an even weaker argument in this case, than the issue of recoverable costs in the Key Tronic Corp. case. In Key Tronic Corp., the parties litigating the issue of recoverable response costs were Key Tronic Corp. and the United States, after both participated and collectively contributed over $5,000,000 to an EPA cleanup fund at the Colbert Landfill in Washington State. Id. at 811. Only after the United States had been released from liability by the EPA did Key Tronic Corp. even commence its action seeking to contribution for its litigation expenses and attorneys' fees. Id. at 12.

In this matter, Courtland Company is not even a participating and contributing party to an EPA cleanup effort. The fact that UCC is attempting to recoup ***any*** of its litigation expenses, attorneys' fees, or expert fees' is completely unwarranted and not supported by statutory law and U.S. Supreme Court precedent. Moreover, Key Tronic Corp. clearly draws a line between fees for identifying PRPs and litigation expenses. UCC has only done analyses of soil samples on Courtland Company's property, not establishing a causal connection between any allegation for groundwater and surface water contamination and the conduct of Courtland Company as a PRP. This failure is not only fatal to UCC's claim for contribution, but also for its contention that it is entitled to litigation costs, attorneys' fees, and experts' fees. Furthermore, to the extent UCC has reasonable fees for identifying PRPs, those fees are not the same as the $200,917.50 of litigation expenses UCC has incurred in this case. As such, UCC's Counterclaims and prayers for relief for attorneys' fees and experts' fees should be dismissed with prejudice, and summary judgment granted in Courtland Company's favor.

### C. UCC Failed to Satisfy the Public Participation Requirement of the NCP

UCC's Counterclaims against Courtland Company must fail due to UCC's lack of compliance with the NCP, specifically as to the Public Participation Requirement. To establish a *prima facie* case under § 9607(a), a plaintiff must show that (1) the property at issue is a "facility" as defined in 42 U.S.C. § 9601(9); (2) a "release" or "threatened release" of a "hazardous substance" has occurred; (3) the "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan"; and (4) the defendants are in one of four classes of persons subject to liability under § 9607(a). Ascon Properties, 866 F.2d at 1152. ***Private parties have the burden of proving that cleanup costs associated with remedial actions are consistent with the National Contingency Plan to recover those cleanup costs under CERCLA.*** 42 U.S.C. § 9607(a)(4)(B); Washington State Dep't of Transp. v. Washington Natural Gas Co., 59 F.3d 793, 800 (9th Cir. 1995) (*emphasis added*).

The NCP is promulgated by the Environmental Protection Agency (EPA) pursuant to CERCLA. 42 U.S.C. § 9605; *see generally* 40 C.F.R. Part 300. The NCP outlines specific steps parties must take in choosing a remedial action plan and cleaning up hazardous waste. It is "designed to make the party seeking response costs choose a cost-effective course of action to protect public health and the environment." Washington State, 59 F.3d at 802. A private party's remedial action is "consistent with the [National Contingency Plan] if the action, when evaluated as a whole, is in *substantial compliance* with … [certain procedural requirements], and results in a CERCLA-quality cleanup." 40 C.F.R. § 300.700(c)(3)(i). The NCP requires the party seeking recovery to provide an opportunity for public comment and participation, conduct a remedial site investigation, and prepare a feasibility study. 40 C.F.R. §§ 300.700(c)(5)(vii)-(viii), (c)(6).

The public participation requirement has two main components. First, in developing a remedial action plan, prior to actual field work beginning, the party conducting the cleanup "shall …to the extent practicable" interview local officials, community residents, or other interested or affected parties to learn their concerns. 40 C.F.R. § 300.430(c)(2)(i). Additionally, a formal community relations plan must be prepared to ensure an opportunity for public involvement, and at least one local "information repository" must be established to make information available to the public about the site remediation. 40 C.F.R. § 300.430(c)(2)(ii). Second, after a remediation plan has been chosen, the party conducting the cleanup shall publish notice of the plan in a local newspaper, provide an opportunity for submission of comments on the proposed plan, provide an opportunity for a public meeting, make a transcript of the meeting available to the public, and prepare a written summary of significant comments and responses to those comments. 40 C.F.R. § 300.430(f)(3).

In Carson Harbor Vill., Ltd. v. County of L.A., the Ninth Circuit Court of Appeals affirmed a U.S. District Court's granting summary judgment to a defendant, thereby denying plaintiff recovery costs associated with cleanup under CERCLA. 433 F.3d 1260 (9th Cir. 2006). In making its decision, the Ninth Circuit found that there was no evidence of active participation by the state agency which could fulfill the public comment requirement of the NCP, and that plaintiff failed to show that it complied with the feasibility study requirements of the Plan. Id.

In Bedford Affiliates v. Sills, the Second Circuit held that "[w]here a state agency responsible for overseeing remediation of hazardous wastes gives comprehensive input, and the private parties involved act pursuant to those instructions, the state participation may fulfill the public participation requirement." 156 F.3d 416, 429 (2nd Cir. 1998) (internal citations omitted); *see also* NutraSweet Co. v. X-L Eng'g Co., 227 F.3d 776, 791 (7th Cir. 2000) (A state agency

monitoring the progress of remediation satisfied the requirement under CERCLA); <u>SPS Limited Partnership, LLLP v. Severastal Sparrows Point, LLC</u>, 808 F.Supp. 2d 794, 805 (D. MD. 2011) ("[S]everal courts, including this Court, have held that government oversight of hazardous waste cleanup efforts may serve to satisfy the public participation and comment element of the NCP." (internal citations omitted)).

In this case, UCC has failed to satisfy the two requirements of public participation. There is nothing of record which shows they interviewed local officials, residents, or interested/affected parties to learn of their concerns. Nor is there evidence demonstrating that a community relations plan was prepared to ensure public involvement with at least one local information repository to make information available to the public. Additionally, UCC failed to publish and provide an opportunity for submission of comments on the proposed plan, provide an opportunity for a public meeting, make a transcript of the meeting available to the public, and prepare a written summary of significant comments and responses to those comments. These failures of UCC are fatal to its Counterclaims. As such, summary judgment should be entered in Courtland Company's favor, and UCC's CERCLA Counterclaims should be dismissed with prejudice.

## IV. <u>Conclusion</u>

As explained above, UCC has failed to support any of its remaining Counterclaims. UCC has failed to establish any liability on the part of Courtland Company, which may entitle it to contribution or indemnity. UCC has failed to show that it is entitled to Response Costs, specifically attorneys' fees or experts' fees. And finally, UCC has failed to meet the Public Participation requirements of the NCP for a valid CERCLA claim. For these reasons, summary judgment should be entered in favor of Counterdefendant, Courtland Company, and UCC's remaining Counterclaims should be dismissed with prejudice.

WHEREFORE, Counterdefendant, The Courtland Company, Inc., requests that this Honorable Court enter an Order granting summary judgment in its favor as to UCC's Counterclaims, thereby dismissing the remaining Counterclaims with prejudice.

Respectfully submitted,

ZIMMER KUNZ, PLLC

/s/ *Matthew G. Breneman*
MATTHEW G. BRENEMAN, ESQUIRE
W.V. I.D. #9303
KERRI A. SHIMBORSKE-ABEL, ESQUIRE
W.V. I.D. #10009
BRIAN M. LUCOT, ESQUIRE
W.V. I.D. #11562
lucot@zklaw.com
310 Grant Street, Suite 3000
Pittsburgh, PA 15219
(412) 281-8000
Counsel for Counterdefendant, The Courtland Company Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE COURTLAND COMPANY, INC., a West Virginia Business Corporation, | ) ) ) |
| Plaintiff and Counterdefendant, | ) No. 2:19-cv-00894 ) ) *Electronically filed* |
| v. | ) ) |
| UNION CARBIDE CORPORATION, a New York Corporation, | ) ) ) |
| Defendant and Counterclaimant, | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing COUNTERDEFENDANT, COURTLAND COMPANY, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO COUNTERCLAIMANT, UNION CARBIDE CORPORATION'S COUNTERCLAIMS was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to, and constitutes service on all counsel of record.

ZIMMER KUNZ, PLLC

/s/ *Matthew G. Breneman*
MATTHEW G. BRENEMAN, ESQUIRE
W.V. I.D. #9303
KERRI A. SHIMBORSKE-ABEL, ESQUIRE
W.V. I.D. #10009
BRIAN M. LUCOT, ESQUIRE
W.V. I.D. #11562
lucot@zklaw.com
310 Grant Street, Suite 3000
Pittsburgh, PA 15219
(412) 281-8000
Counsel for Counterdefendant, The Courtland Company Inc.